WAWAK AND VAUGHT *v*. STATE.

Opinion delivered February 1, 1926.

1. CONSPIRACY—LIABILITY OF CONSPIRATORS.—A party coming into a conspiracy after its formation is deemed in law a party to all acts done by any of the other parties, either before or after, in furtherance of the common design.

2. WITNESSES—EXTENT OF CROSS-EXAMINATION.—The extent to which a cross-examination of a witness is allowed to proceed is a matter largely within the discretion of the trial judge.

3. WITNESSES—CREDIBILITY—IMPEACHMENT ON CROSS-EXAMINATION. —It was not improper to permit a witness to be asked on cross-examination as to whether her husband had not killed a man on account of her immoral relations with that man.

4. WITNESSES—IMPEACHMENT.—While it is improper to ask a witness on cross-examination whether her father had not been con-

fined in the penitentiary, the error was waived where no objection was saved.

5. CRIMINAL LAW—INSTRUCTIONS AS TO REASONABLE DOUBT.—It was not error to refuse an instruction that "if any of the testimony in the case is susceptible to two constructions, one of guilt and one of innocence, then it is your duty to give it the construction of innocence"; the court having given a correct charge upon innocence and reasonable doubt.

6. CRIMINAL LAW—INSTRUCTION IN ABSENCE OF DEFENDANT'S COUNSEL.—Where, after being instructed, the jury returned into court and asked certain instructions, whereupon the court re-read the instructions previously given, the error of doing so in the absence of defendant's counsel was waived where they were informed of what the court did before the jury retired but offered no objection to the language of the charge.

Appeal from Perry Circuit Court; *Richard M. Mann,* Judge; affirmed.

*Isgrig & Dillon* and *Walter A. Isgrig,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J.    Alfred Wawak was indicted for carrying a pistol, and for the crime of murder, alleged to have been committed by shooting one Floyd Parker with a gun, and for the crime of assault with intent to kill, alleged to have been committed by shooting at Fred Parker with a pistol. Clarence Vaught was separately indicted for murder, which offense was alleged to have been committed by shooting Floyd Parker. By consent the defendants were jointly tried, Wawak being placed on trial on all three of the indictments against him. Both defendants were convicted of involuntary manslaughter and given a sentence of one year in the penitentiary. Wawak was also found guilty of carrying a pistol, and was fined $50 for that offense. He was acquitted of the charge of assault with intent to kill Fred Parker.

It was the theory of the State that Floyd Parker, who was a married man, but whose wife was a patient in the State Hospital, was paying attention to Lois Booher, a sister of Pink and Hubert Booher. These brothers not

only resented the attention of Parker to their sister, but were suspicious also of two unmarried men.

Parker was killed on Sunday morning, and on the Friday night immediately preceding, these young men, whose names were Kelly and Nevells, went to the home of Parker in an automobile, where they were joined by Lora Parker, a sister of Floyd Parker. They then drove to the home of Pink and Hubert Booher for Lois Booher, the sister of the Booher brothers. Hubert Booher objected to his sister going with the young men, and attempted by force to compel her to get out of the car, and when he failed in this he went into his house, and the car was driven away, and as it was driving away one of the Booher brothers fired two shots at the retreating car.

When Kelly and Nevells and the two young ladies returned, the girls got out of the car at the home of Floyd Parker, and Lois Booher spent the night there. This angered Hubert Booher, and he told Kelly, in the presence of his brother Pink, that he would get his sister or kill Parker before morning. Neither of the appellants were present at the time this threat was made, and the admission of this testimony is assigned as error. All parties concerned appear to have known that Pink and Hubert Booher were suspicious of their sister's conduct and objected to the company she was keeping. Lois Booher did not return to her home where her brothers lived on Saturday, but spent that day and night also at the home of Floyd Parker. On Sunday morning Pink and Hubert Booher, accompanied by appellants, went to Parker's house. Appellant Vaught was armed with a shotgun, and appellant Wawak had two pistols. When Parker saw the party in his yard he ordered them to leave, and they began cursing him. Parker stated to the Booher brothers that he did not want to fight them, as they were minors. Vaught said, ''I am twenty-one; fight me.'' Parker accepted the challenge, and picked up a single-tree and advanced on Vaught, who shoved Parker off with his shotgun, but Parker got near enough to

Vaught to strike him with the single-tree, and Vaught was knocked down and rendered unconscious. Parker saw Wawak draw one of the pistols, whereupon Parker turned and started into the house, but just as he reached the door he was shot in the back with the shotgun and killed. The State contended that about this time Wawak also fired at Fred Parker, who had come upon the scene of the killing, but, as we have said, he was acquitted on this charge of assault with intent to kill.

One of the errors assigned for the reversal of the judgment is that the testimony is not sufficient to sustain the verdict of the jury. But we think the contrary appears from the facts just stated.

Exceptions were saved to the admission of testimony showing that Hubert Booher had made threats against Floyd Parker, neither of the appellants being present at the time. Appellants denied that they had conspired with the Booher brothers to do Parker any harm, and also denied that they had any such intention on the Sunday morning when the killing occurred, and denied knowing anything about any previous trouble between the Boohers and Parker. Vaught testified that he had borrowed the shotgun to go hunting later, and Wawak testified that he went to Parker's house to employ Parker's brother Fred to haul logs, and they both testified that they had no part in the quarrel and killing, and only attempted to prevent the parties from fighting. These defenses were submitted to the jury under instructions correctly declaring the law, and their statements as to their part in the fatal encounter were evidently not believed by the jury. The truth of these statements was, of course, a question for the jury.

Upon these questions the court charged the jury as follows: "You are instructed to disregard all the testimony as to the occurrences Friday night, and also all testimony as to the Sunday morning occurrences, unless you find from the evidence, beyond a reasonable doubt, that the defendants were parties to the same, or that they

knew of the said occurrences, and were actuated by them.'' This instruction submitted to the jury the question whether appellants were parties to the unlawful purpose of the Booher brothers to assault Parker, and whether they were actuated in their conduct by the knowledge of their intention to do so. It was relevant to show the purpose for which the party, consisting of the Booher brothers and appellants, went to Parker's house on Sunday morning, and for this reason the testimony of Kelly as to the threat made the preceding Friday night by Hubert Booher in the presence of his brother Pink was admissible. It is true that appellants were not present, but the threat was to kill Parker or to get his sister from Parker's home. This sister had not returned home since the threat was made, and it is the theory of the State that appellants had joined the Booher brothers in their purpose to do Parker bodily harm.

Appellants insist that there was no proof of any conspiracy to do Parker harm before Sunday morning, and that it was therefore erroneous and prejudicial to admit testimony showing threats on Hubert Booher's part, in the absence of a showing that a conspiracy had been previously formed. But, as we have said, we think it was a question for the jury whether the four persons present when Parker was killed had conspired to do Parker bodily harm.

In 12 C. J., page 579, at § 88 of the chapter on conspiracy, it is said: ''All who accede to a conspiracy after its formation and while it is in execution, and all who, with a knowledge of the facts, concur in the plans originally formed and aided in executing them, are fellow conspirators. They commit an offense when they become parties to the transaction or further the original plan. A person coming into a conspiracy after its formation is deemed in law a party to all acts done by any of the other parties, either before or after, in furtherance of the common design. Whenever conspirators act, by lawful intendment they renew or continue their agreement, and it

is renewed or continued as to all whenever either of them acts in furtherance of the common design.''

In 1 Greenleaf on Evidence (16 ed.) page 305, § 184a (111), it is said: ''The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with refer-ence to the common object, is, in contemplation of law, the act and declaration of them all; and is therefore orig-inal evidence against each of them. It makes no dif-ference at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed, in law, a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such common design.'' See also *People* v. *Stokes,* 89 Pac. 997; *Baker* v. *State,* 7 Tex. App. 612.

On the cross-examination of appellant Vaught, he was asked about a difficulty he had had with a boy, and it is insisted that the cross-examination was permitted to proceed to an unreasonable length. This, however, was a matter largely within the discretion of the trial judge, and it does not appear that an abuse of this discretion was shown, inasmuch as Vaught exonerated himself, and his answers, whether true or false, were conclusive of this collateral matter.

A witness named May Bradshaw was called as a wit-ness for appellants, and on her cross-examination was asked where her father was, and she answered that he was in the penitentiary. No objection was made to this ques-tion. The witness was then asked where her husband was, and when the witness answered that she did not know, that he had been gone for quite awhile, she was then asked why he had left her. Objections were made and exceptions were saved to all questions and answers relating to the whereabouts of witness' husband and the cause of his absence. These questions tended to show

that the husband of witness had killed a man on account of the immoral relations of the man killed with the witness, and in overruling the objection to this testimony the court said: "The State has the right to ask about her personal conduct as going to her credibility only." This examination was admissible for the purpose stated, and we cannot say the court abused its discretion in the extent to which the cross-examination was carried in regard to the husband of the witness. No theory appears, however, on which it was proper to ask the witness about the confinement of her father in the penitentiary. In the case of *Lee* v. *State*, 66 Ark. 286, a witness was asked if her son had not been sent to the penitentiary, and she answered in the affirmative. In holding that the cross-examination was improper and prejudicial Mr. Justice BATTLE said: "This mode of impeachment was improper, and the testimony elicited was inadmissible. Witnesses may be impeached by cross-examination as to their associations which affect their credibility, but such associations must be voluntary. They are not responsible, legally or morally, for the acts of their kin, with which acts they are in no wise connected. It does not follow that a witness is unworthy of belief because a relative has committed a felony. Worthy credible witnesses may have felons for kindred."

The question asked the witness May Bradshaw, in regard to her father, was therefore improper, but no objection was made to this question, and the error must therefore be treated as having been waived.

Objections were saved to certain instructions given by the court; but, after considering these instructions and the objections thereto, we have concluded that they announce correct and familiar principles of law as applied to the respective theories of the case, and no useful purpose would be served by discussing them.

Appellants saved an exception to the refusal of the court to give the following instruction: "If any of the testimony in the case is susceptible to two constructions, one of guilt and one of innocence, then it is your duty to give it the construction of innocence."

In the case of *Lasater* v. *State,* 77 Ark. 468, Mr. Justice RIDDICK said: "The doctrine of reasonable doubt does not apply to the different items that make up the proof of guilt." This is a question which arises upon a consideration of all the testimony in the case. The court gave a full and correct charge on the questions of presumption of innocence and reasonable doubt, and no error was committed in refusing this instruction.

It is recited in the transcript that, after the jury had retired to consider of their verdict, they returned into the court room, when the foreman said: "We want the lowest degree of punishment—this aggravated—."

Under the indictment against appellant Wawak for assault with intent to kill the court had charged the jury in regard to the offense of aggravated assault and the punishment therefor, but when the question quoted above was asked by the foreman the judge inquired "if the jury wanted to know the different degrees of punishment for the offense charged," and the jury signified their assent. The court then re-read the instructions defining the punishment prescribed by law for the various offenses charged in the indictments.

The foreman of the jury then inquired: "What is the penalty of a man for an accessory to a crime?" And in answer to this question the court replied: "That is covered by the instructions."

It is then recited in the transcript that "at this point the attorneys for the defendants appeared before the court and stated that they were not present in court when the court instructed the jury as above, and saved their exceptions to the court giving any additional instructions in their absence."

To this statement the court responded that he was under the impression that counsel for defendants were present in the court room at the time, and that he would not have given the jury any additional instructions had he known counsel were absent.

Counsel for appellants say this action of the court in instructing the jury in their absence was in violation of

§ 3192, C. & M. Digest, and constitutes reversible error. This section reads as follows: ''After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Under their being brought into court the information required must be given in the presence of, or after notice to, the counsel of the parties.''

If counsel for appellant are correct in their application of this statute to the facts stated, there would have been nothing for the court to do but enter a mistrial and discharge the jury when the exception was saved to what had been done. The court was in error in charging the jury in the absence of counsel for appellant, but the error was discovered in ample time to have been corrected. There was no question about what the court had charged the jury, and there is no contention that the charge was erroneous. Had counsel been unaware what the charge was, the court would, no doubt, have repeated it, and counsel were in position, before the jury retired to further consider of their verdict, to have suggested any modification in the charge which they thought proper, or any additional charge, had they deemed one advisable, and to have excepted to the court's refusal so to do had the request been refused. Under the circumstances we think the error was not prejudicial, and does not call for the reversal of the judgment, because, as we have said, the error could easily have been corrected before the jury retired from the courtroom.

Upon a consideration of the whole case, we find no prejudicial error, and the judgment of the circuit court will therefore be affirmed.