BURNS *v.* STATE.

4109                                    125 S. W. 2d 463

Opinion delivered February 27, 1939.

*Joe Wills* and *Sam Robinson,* for appellants.

*Jack Holt,* Attorney General and *Jno. P. Streepey,* Asst. Atty. General, for appellee.

HOLT, J. The appellants, William Mabel Burns, Haywood Duckworth and Roma Ollison, were tried and convicted of the crime of robbery in the Pulaski circuit court, first division, and each sentenced to ten years in the penitentiary, on information as follows: "Comes Fred A. Donham, prosecuting attorney within and for Pulaski county, Arkansas, and in the name and by the authority, and on behalf of the state of Arkansas, information gives accusing William Mabel Burns, Haywood Duckworth and Roma Ollison of the crime of robbery, committed as follows, towit: The said William Mabel Burns, Haywood Duckworth and Roma Ollison, in the county and state aforesaid, on the 7th day of June, A. D., 1938, unlawfully, feloniously, wilfully, maliciously and violently from the person of O. Sherman, (Trustee of Shorter College, a corporation) in fear, did take, steal and carry away $2,319.90, gold, silver and paper money, said money being then and there the property of him, the said O. Sherman (Trustee of Shorter College, a corporation), against the peace and dignity of the state of Arkansas."

The facts upon which the information was based and the convictions had, stated in their most favorable light to the State, substantially, are: O. Sherman, a colored minister and a Trustee of Shorter College, a corporation, and a resident of North Little Rock, Arkansas, at about eight o'clock p. m. on June 7, 1938, left a committee meeting at Bethel Church in that city, carrying a bag which contained approximately $2,300.00 in currency,

silver and a few checks. He got in his automobile with this bag of money and drove to a point near his home when another car drove up by his side and stopped him. One of the defendants, Roma Ollison, jumped out, and while Sherman was still at the wheel of his car, pointed a gun in his face, forced him to hand over the bag containing the money, then shot Sherman in the jaw, jumped back in his car and attempted to escape. In the car with Ollison was defendant, Haywood Duckworth. Sherman, although badly wounded, gave chase in his own car and succeeded in having Duckworth and Ollison captured by the officers. The bag in which the money was carried had been loaned to Sherman by Rev. E. J. Lunnon. There was also in the bag a pistol and bible belonging to Lunnon. Duckworth and Ollison voluntarily confessed their part in the robbery, admitted that Ollison shot Sherman in accomplishing the robbery, and in fact none of the details are seriously denied by them, except it is their contention that it was a fake robbery. Duckworth directed the officers to the place where the bag was thrown after the robbery in a ditch in Dark Hollow. The gun and bible were also found, but no money except a five cent piece was found in the bag or ever recovered.

Defendant Duckworth also made a voluntary confession to officer Jack Pyle in which he stated that the money was in a bag in a canvas sack and that he gave the money to defendant, Mabel Burns, in Fordyce, Arkansas, in Mabel Burns' home.

The record also reflects, according to the testimony of Rev. E. J. Johnson, that about fifteen minutes before eight o'clock, June 7, 1938, the day of the robbery, defendant Mabel Burns came from the north side of the church to the sidewalk and he and Duckworth stopped about the center of the church and talked three or four minutes. This was about fifteen minutes before Sherman left with the money. Duckworth then came across the street, talked to Burns three or four minutes, and Burns went across the street to the car and talked to someone who was in the car. There is other testimony that Burns was seen at the church that night.

Jack Pyle, an officer, further testified, that defendant, Mabel Burns, made a statement to him freely and voluntarily, without any hope or promise of reward, in which he admitted that he sent a telegram at 4:22 p. m., June 7, 1938, from the Little Rock office of the Western Union addressed to Roma "Bo" Ollison, c/o Fordyce Lumber Company, Fordyce, Arkansas, as follows: "You will be too late." Signed "Joe". Hiram King testified that he went with defendant, Mabel Burns, to the telegraph office in Little Rock. He said he wanted to send a telegram and that it was in the afternoon. Defendant Duckworth denied that Burns had anything to do with the robbery. Defendant Ollison made the statement in the presence of one of the officers that Burns was to send him a telegram if the money was out of the church by 3:30 o'clock, but later said he was forced to make the statement. Defendant Burns denied that he had any part in the robbery at all. Officer Lawrence testified that Burns made an admission to him in which he said he would show them where the money was and go with them to get it.

Appellants earnestly urge, first, that it was error as to Burns and Ollison for the trial court to allow Duckworth to testify that at some prior time he had told the prosecuting attorney that they, Ollison and Burns, planned and staged the robbery, for the reason that neither Burns nor Ollison were present when the statement was made and also that the conspiracy had then been completed. We copy from the record the testimony upon which this alleged error is based: "Q. I want to ask you if you didn't tell me this in my office? 'Did you participate in that robbery, I mean did you have anything to do with it' and you answered 'Yes'. 'Tell what you know about it, what you did, and what you got out of it. First, let me ask you this question—Who was in on the robbery?' and you answered, 'Romy Ollison, they call him Bo'? A. I don't know what I did, I am liable to have told you Blakely or anything. Q. And the further question, 'Who else'? Mr. Robinson: I object. Court: You have a right to impeach him by the questions. Mr. Robinson: That was a statement made

in Burns absence. Court: I don't think he is denying it, it is a matter for the jury to determine. Mr. Bogard: Didn't you tell me in that office there that you and Ollison and Burns planned and staged that robbery? Mr. Robinson: I object. Court: Objection overruled. Mr. Robinson: Save my exceptions. Mr. Bogard: Q. Didn't you tell me that? A. Yes, sir, I told you that, I was going to have to say somebody. Q. And you never at any time mentioned anybody but Mabel Burns and Roma Ollison? A. I might not have to you.''

The record discloses a short time before this testimony was admitted that in the testimony of officer Pyle, while he was testifying about admissions made by one of the appellants, the court ruled that such admissions would not be admissible after the completion of the conspiracy against the other two appellants unless they were present. This admonition of the court is as follows: ''Gentlemen of the jury, you are not to consider any statement made by the defendant Mabel Burns that in any manner incriminates the other defendants in connection with this conversation because if the crime was committed it was already completed, the statement of one conspirator against a co-conspirator, if such statement is made after the completion of the offense involved is not competent against the others, so you will not consider any statement made by Burns as evidence against Roma Ollison or Haywood Duckworth.'' We think this admonition of the court was broad enough, and was clearly understood by the jury, to mean that they were not to consider the statement of one defendant as against the other two when said statement was made out of their presence and after the conspiracy or crime had been committed. We do not think that the rights of Burns and Ollison could possibly have been prejudiced by the admission of the above testimony. This testimony was admitted on cross-examination of one of the appellants and it has always been held by this court that the cross-examination of the defendant to test his credibility may be given wide latitude. See *Wawak and Vaught* v. *State.* 170 Ark. 329, 279 S. W. 997.

Appellants next contend that it was error of the trial court to permit Burns to be convicted when charged as a principal, when it is contended that the evidence showed that if he were guilty of anything it was of accessory before the fact. Section 25 of Initiated Act No. 3, now Section 3276 of Pope's Digest, states that the distinction between principal and accessory is abolished and all accessories before the fact shall be deemed principals and punished as such. Prior to the passage of Section 3276 of Pope's Digest it was stated that accessories should be punished as principals, but it was held that they must be indicted as accessories before the fact. We hold that the rule formerly adhered to by this court and set out in *Boze Smith* v. *State,* 37 Ark. 274, wherein this court held that one who has advised or encouraged the commission of a felony, but was not actually or constructively present when it was committed, cannot be convicted upon an indictment charging him, not as an accessory before the fact, but as a principal perpetrator of the crime, has been changed by the above provision of the statute which became a law on January 11, 1937. Under this section there can be no longer any distinction between accessories before the fact and principals, and the reason requiring an accessory before the fact to be indicted as such no longer exists. The trial court did not err in instructing the jury that the distinction between principal and accessory has been abolished thereby permitting the jury to convict one who may be an accessory when charged as a principal, nor did the trial court err in refusing to grant a peremptory instruction because defendant Burns had been indicted as a principal.

Finally appellants contend that the court erred in refusing to give defendants' requested instruction No. 2, which is as follows: "You are instructed that if you find from the evidence in this case that Blakely entered into an agreement with Duckworth and/or Ollison whereby the said Duckworth and Ollison were to participate in a fake robbery of Sherman and that Sherman had full knowledge of the fact that the fake robbery, if any, was to be committed and that the said Sherman was a party

to the scheme, if any, then you will find all of the defendants not guilty." The only testimony disclosed by this record as to whether or not the admitted robbery was concocted and a fake, is found in the testimony of two of the appellants, Duckworth and Ollison. The testimony is ample to support the State's theory that the robbery was in no sense a fake, but real in every sense of the word. This court has held that one who obtains money by some fraudulent trick or artifice and carries it away, is guilty of larceny. See *Hunt* v. *State*, 72 Ark. 241, 79 S. W. 769, 65 L. R. A. 71, 105 Am. St. Rep. 34, 2 Ann. Cas. 33.

We think, however, that the court fully and correctly covered this question in instruction No. 19, which is as follows: "Where money or any other thing of value is unlawfully and feloniously taken from the person, or in the presence, of the owner by force, or intimidation, so as to constitute the crime of robbery, the crime of larceny has also been committed. In other words, robbery is simply larceny with the elements of force or putting in fear superadded. You may, if the evidence justifies it, convict either of robbery or larceny, but not both. Larceny may be by stealth alone or it may be accomplished by means of a trick or fraud, so that if you find from the evidence in this case beyond a reasonable doubt that the defendants, or any of them, used a trick or fraud to take, steal and carry away the personal property of Shorter College and to deprive said owner of the same, and that said defendant or defendants did so with a felonious intent you will find said defendant or defendants guilty of larceny." This instruction correctly submitted to the jury whether or not there was trickery or fraud used to deprive Shorter College of the money in question. We hold, therefore, that there was no error in the court refusing to give instruction No. 2 requested by appellants.

On the whole case we find no errors, and, since the evidence abundantly supports the verdict of the jury, the case is affirmed.