DORSEY v. STATE.

4656                                    240 S. W. 2d 30

Opinion delivered June 4, 1951.

Rehearing denied July 2, 1951.

*Coates & Lear,* for appellant.

*Ike Murry,* Attorney General and *Jeff Duty,* Assistant Attorney General, for appellee.

ROBINSON, J.   On the 2nd day of August, 1950, the appellant Peter Dorsey and one, Aubrey Smith, stole a cow and calf in St. Francis County, and brought the

stolen animals to the stockyards in North Little Rock in an attempt to sell them, arriving there about 7 a. m., on August 3rd. While at the stockyards Dorsey and Smith aroused suspicion and were arrested by Pulaski County officers, who notified St. Francis County officers that the men were being held. Between 4 and 5 p. m., on August 3rd, Otis Tatum and Ray Campbell, Deputy Sheriffs of St. Francis County, arrived in Little Rock to return the prisoners, Dorsey and Smith, to St. Francis County.

After Tatum and Campbell obtained custody of Dorsey and Smith, they started their return journey and stopped at a roadside restaurant, at which time the prisoners were left alone in the automobile for about 30 minutes. The officers then returned to the car, Tatum taking the driver's seat and Campbell occupying the front seat to Tatum's right. Dorsey and Smith, the prisoners, occupied the rear seat, Dorsey sitting to the right of Smith. Dorsey's left wrist was handcuffed to Smith's right wrist. The officers, Tatum and Campbell, each had a pistol in a scabbard on his right hip. When they reached a point about a mile east of Wheatley, in St. Francis County, the two prisoners simultaneously grabbed for the officers' pistols. Officer Campbell managed to get hold of Dorsey's wrist, thereby preventing Dorsey from immediately obtaining Campbell's gun. Smith obtained Tatum's pistol without difficulty and shot Tatum in the shoulder and in the face. The second shot that hit Tatum was the one that struck him in the face and he was thereby rendered unconscious. Campbell was shot twice, once in the head and once in the back, and killed instantly. Tatum recovered from his wounds with the exception of being partially paralyzed. After the officers were shot the two prisoners fled. They managed to remove the handcuffs, but were captured the next day.

The Prosecuting Attorney, in separate Informations, charged Peter Dorsey and Aubrey Smith with murder in the first degree. Dorsey was charged under the name of "Dawson," but all the proof shows he is the person intended to be charged. Ark. Stats., § 43-1013; *Daniels v. State,* 186 Ark. 255, 53 S. W. 2d 231; *Bridges v. State,* 122 Ark. 391, 183 S. W. 962.

Both defendants filed a petition for a change of venue which was granted, the cases being transferred to Phillips County for trial. Smith was tried first, convicted and sentenced to death. *Smith* v. *State,* 218 Ark. 725, 238 S. W. 2d 639. Then Dorsey was tried, convicted and sentenced to death, from which conviction and sentence comes this appeal.

The Information charging the defendant with murder was filed by the Prosecuting Attorney in Circuit Court on the 7th day of August, and at that time the court made an order that the defendant be given a mental examination by the doctors at the State Hospital in Little Rock. The defendant was, therefore, transferred to the Pulaski County jail in Little Rock. On the following day, the 8th of August, the defendant made a statement to Ben Kent and W. T. Bolling, members of the Arkansas State Police Department. This statement was admitted in evidence over the objection of the defendant, it being the contention of appellant Dorsey that the statement was not admissible because it was obtained by the officers while the defendant was in custody without a warrant and prior to being taken before a magistrate. Also, in appellant's brief it is argued that the statement was given as the result of a horrible and unmerciful beating administered to defendant, but there is no evidence in the record, including the testimony of the defendant, to support this argument. The defendant testified that he was mistreated at the time he was arrested for stealing the cattle, but does not claim that he made the statement in regard to the killing of Officer Campbell due to any abuse suffered by him when under arrest in connection with the larceny of the cow and calf. The only thing said by the defendant in his testimony given at the trial from which it might be inferred that he was threatened at the time he gave his statement in regard to the homicide was that, after he was removed from the Pulaski County jail to the State Police headquarters where his statement was given, one of the officers pulled off his coat and said he wanted the defendant to tell the truth, the implication being that the removal of his coat by the officer constituted a threat. But, it must be remembered that this was on August 8th

in Little Rock, Arkansas. It would only be natural, under summer weather conditions, for the officer to remove his coat at the first opportunity. It is not claimed that the officers taking the statement did or said anything else whatever that could be construed as a threat of physical abuse or psychological coercion.

The principal contention on the part of appellant with reference to the statement is that it was obtained prior to his being taken before a magistrate. In this connection the appellant mainly relies on decisions of the Federal Courts. So far as the law of this State is concerned, the case of *State* v. *Browning,* 206 Ark. 791, 178 S. W. 2d 77, held adversely to appellant's contention. The Browning case was followed in *Palmer* v. *State,* 213 Ark. 956, 214 S. W. 2d 372, in which *certiorari* was denied by the United States Supreme Court, 336 U. S. 921, 69 S. Ct. 639, 93 L. Ed. 1083.

Aside from the issue of whether a confession is freely and voluntarily made, which is passed upon by the jury and trial court, but subject to review by the appellate courts, *Ashcraft* v. *Tenn.,* 332 U. S. 143, 64 S. Ct. 921, 88 L. Ed. 1192, the Federal Courts will take into consideration whether there has been a violation of the Act of Congress providing: "It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense to take the defendant before the nearest U. S. Commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking of bail." 18 U. S. C. 595; also, 5 U. S. C. 300a, which requires that the person arrested shall be immediately taken before a committing magistrate. All courts will take into consideration whether there has been a violation of the 14th Amendment to the Constitution of the United States or the guarantees of the 5th Amendment that no person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

*McNabb* v. *United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, and *Shaw* v. *United States,* 335 U. S. 410,

69 S. Ct. 170, 93 L. Ed. 100, turned on the question of whether the defendant's rights had been protected in accordance with the Federal Statutes and Rules of Criminal procedure in the Federal Courts, and not on the constitutional question. The case of *Watts* v. *Ind.,* 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801, was decided on the constitutional question. There it was held that the trial court erred in admitting a confession obtained in a manner which bears no resemblance to the facts in the case at bar.

In the case of *United States* v. *Mitchell,* 322 U. S. 68, 64 S. Ct. 896, 88 L. Ed. 1140, the court said: ''We are dealing with the admissibility of evidence in criminal trials in the Federal Courts. Review by this court of State convictions presents a very different situation, confined as it is within very narrow limits. Our sole authority is to ascertain whether that which a state court permitted violated the basic safeguards of the 14th Amendment. Therefore, in cases coming from the state courts in matters of this sort, we are concerned solely with determining whether a confession is the result of torture, physical or psychological, and not the offspring of reasoned choice.''

In the case at bar it is not claimed by the defendant that he confessed to anything against his interest because of torture, physical or psychological. In fact, there is very little difference between the statement introduced in evidence, as having been given to the officers, and the oral testimony of the defendant given at the trial. He claims that some things he told the officers were not put into the statement, and denies that he told the officers there was any plan between him and Smith to overpower the officers. He does not testify that he was forced to say that there was such a plan. He merely denies making the statement. The State's case did not hinge on any statement obtained from the defendant, and never at any time, was the defendant held for the purpose of wringing a confession from him. When the defendant was arrested subsequent to the killing, he had the murdered officer Campbell's pistol in his possession. It was known at the time that he participated in the killing and three days

after he was captured, and before he made any statement, he was formally charged with murder.

In *United States* v. *Mitchell, supra,* the court said the detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for long hours under psychological pressure were the decisive features in the McNabb case, which led the court to rule that a conviction on such evidence could not stand. Here, the defendant does not say that any inculpatory statements, differing from his testimony given at the trial, were obtained from him by any means. He simply denies that he made any such statements.

Defendant requested the following instruction: "If you find there was no agreement between Aubrey Smith and Peter Dorsey to murder Ray Campbell and you further find that Peter Dorsey did not aid or abet or assist Aubrey Smith in shooting Ray Campbell, then Peter Dorsey would not be responsible for the murder of Ray Campbell." The court is not required to give a multiplicity of instructions stating the law in various ways, and the court gave instruction No. 3 requested by the defendant, which is as follows:

"The court instructs the jury that the mere fact of one person being present at the time the shooting occurred, and the further fact that he followed along after the party doing the shooting, will not of itself be sufficient to convict the party following of aiding and abetting in the shooting, but before you can find that the defendant Peter Dorsey was aiding and abetting in the shooting, you must find that he was acting in concert with Aubrey Smith and actually participated in the shooting." Instruction No. 3 given as requested by the defendant was more favorable to him than he was entitled to under the law.

In the case of *Boone* v. *State,* 176 Ark. 1003, 5 S. W. 2d 322, it was said: "The general rule is that where persons combine to do an unlawful thing, if the act of one proceeding according to the common plan terminates in

a criminal result, though not the particular result meant, all are liable."

Section 41-119, Ark. Stats., provides: "An accessory is he who stands by, aids, abets or assists, or who not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime."

Section 41-118, Ark. Stats., provides: "The distinction between principals and accessories before the fact is hereby abolished, and all accessories before the fact shall be deemed principals and punished as such. In any case of felony, when the evidence justifies, one indicted as principal may be convicted as an accessory after the fact; if indicted as accessory after the fact, he may be convicted as principal."

There is no distinction between one who aids, abets or assists and the one who actually fired the shots. *Burns v. State,* 197 Ark. 918, 125 S. W. 2d 463.

The appellant contends that the court erred in refusing to give other instructions requested by the defendant. We have carefully examined the instructions. Every phase of the law involved was given to the jury, and no error was committed in the giving of any instruction on the part of the State, or the refusal to give any instructions requested by the defendant.

Defendant moved for a directed verdict claiming that the so-called confession is inadmissible, and that if ruled out there is not sufficient evidence to support the verdict. In the first place, the statement designated as a confession was admissible as has been heretofore pointed out. In the second place, the evidence would be sufficient to sustain a conviction if the confession had been ruled out. The jury could have found that Smith, whose right wrist was handcuffed to Dorsey's left wrist, could not have grabbed Officer Tatum's pistol from its holster, shot Tatum twice, and shot Officer Campbell twice without the aid of Dorsey. In fact, the evidence is that Dorsey was attempting to get Officer Campbell's pistol at the time Campbell was killed. Thus, Campbell was prevented by Dorsey from defending himself. The motion for a directed verdict was properly overruled.

The appellant, a Negro, filed a motion to quash the jury panel on the ground that there had been discrimination against the Negro race in selection of the jury panel because due regard had not been given to the proportion of Negro electors in Phillips County. Subsequent to the selection of the jury, the motion was renewed; both motions were overruled by the trial court.

The entire jury panel selected by the jury Commissioners was excused by the court because the veniremen were disqualified by reason of having served as jurors in the Smith case, *supra,* or were in the courtroom and heard the testimony in the case. The sheriff summoned 37 white and 3 Negro veniremen. In connection with appellant's "Motion to Quash the Panel," the court said:

"It is agreed by and between counsel for both sides in this case that the regular panel of petit jurors selected by the regular jury commissioners for the fall term, 1950, of the fall term of the Phillips County, Arkansas, Circuit Court were disqualified and that the court directed the sheriff of the county to summon forty (40) special veniremen from which to select a jury to try the defendant; that the sheriff has selected forty (40) qualified electors from the total qualified electors of Phillips County, both white and Negro, and has filed said list with the clerk of this court; that the sheriff has selected only three (3) Negro qualified electors and thirty-seven (37) white qualified electors; that according to the present list of qualified electors of Phillips County, Arkansas, there are 5,144 white electors and 2,616 Negro electors; that commencing approximately ten years ago the jury commissioners of Phillips County, Arkansas, have for each term of the court, in selecting the jurors to serve, have generally named one or two Negro electors to serve on the regular panel, with the exception of one year when three were named. It is further agreed by and between counsel for the State and counsel for the defendant that the figures in the records of the Phillips County Collector's office showing the number of white electors and Negro electors for each of the last preceding ten years, ending with 1950, are correct, and may be included in this record as the

correct number of electors, white and Negro, for said period of time.

"It is also agreed that the witness, C. E. Mayer, called to testify on a similar motion in the case of *State of Arkansas* v. *Aubrey Smith,* on the 20th day of November, 1950, if present would testify to the same facts as testified to by him in that case and that his testimony in that case may be incorporated herein as a part of this record."

In support of the "Motion to Quash" appellant cites *Ballard* v. *United States,* 329 U. S. 187, 67 S. Ct. 261, 91 L. Ed. 181. In that case the Court held that "the purposeful and systematic exclusion of women from the panel was a departure from the scheme of jury selection which Congress had adopted."

The case at bar was in Phillips County on a change of venue, which had been granted on motion of the defendant. There is no showing that the Sheriff of Phillips County, who summoned all the veniremen in this case, had systematically excluded Negroes from being selected for jury service. In fact, there is no showing that the Sheriff ever selected a jury panel previous to the one in question, or that he systematically excluded or included anyone on account of being a member of any geographical, political, racial, religious, or economic group. The defendant did not choose to call the sheriff as a witness and prove just how he selected the veniremen, or question him in regard to whether he excluded or included anyone on account of his race. The mere fact of inequality of the number selected does not of itself show discrimination. *Smith* v. *State,* 218 Ark. 725, 238 S. W. 2d 639; *Akins* v. *Texas,* 325 U. S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692; *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307; *Zimmerman* v. *Maryland,* 335 U. S. 870, 69 S. Ct. 161, 93 L. Ed. 414, cites the Akins case. Also, the Akins case was cited with approval in the case of *Cassell* v. *Texas,* 339 U. S. 282, 70 S. Ct. 629, 94 L. Ed. 839, in which case Mr. Justice REED, speaking for the court, said:

"Jurymen should be selected as individuals, on the basis of individual qualifications and not as members of a race." There is no showing in this record that the sheriff selected the veniremen on any other basis.

The Constitution requires a fair jury without regard to race. Proportional racial limitation is forbidden and an accused is entitled to have charges against him considered by a jury in the selection of which no one has been included or excluded because of race.

The burden of showing facts which permit an inference of purposeful limitation is on the defendant. *Martin v. Texas*, 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497.

It would not be proper for the court to instruct the sheriff to summon so many of one race and so many of another for there must not be inclusion or exclusion because of race. § 43-1904, Ark. Stats. provides:

"When the panel is exhausted, the court shall order the sheriff to summon bystanders, to at least twice the number necessary to complete the jury, whose names shall be placed in the box and drawn, and such jurors shall be sworn, examined and disposed of in the same manner as is provided for drawing, examining and disposing of the regular panel. If the jury is still incomplete, the bystanders shall again be summoned to twice the number necessary to complete the jury, who shall, in like manner, be drawn, sworn and disposed of, and the mode herein provided shall be continued until the jury is completed."

The regular panel was exhausted by reason of having been disqualified by the trial of the Smith case. Pursuant to the Statute, the court ordered the sheriff to summon 40 veniremen. There is no showing as to the reason 37 white and 3 Negro veniremen were summoned, and there is no showing that the sheriff employed a systematic course of action in selecting fewer Negro than white veniremen for jury service. We cannot assume that the sheriff did not do his duty, which was to summon 40 qualified electors, regardless of race.

112

In addition to examining the points argued in appellant's brief, we have explored the record searching for errors. Finding none, the judgment is affirmed.