BOONE v. STATE.

4938                                    327 S. W. 2d 87

Opinion delivered September 14, 1959.

*W. Harold Flowers,* for appellant.

*Bruce Bennett,* Attorney General; by: *Thorp Thomas,* Assistant Attorney General, for appellee.

J. Seaborn Holt, Associate Justice. On an information charging the crime of murder in the first degree, appellant, Rogers Boone, a Negro, was found guilty of the murder of M. R. Hamm, a white man 76 years of age, and his punishment fixed at death. This appeal followed.

For reversal appellant relies on the following points: "(1) The court erred in overruling appellant's motion to quash the information. (2) The conduct of the trial court in communicating with the jury by entering the jury room without the defendant or his counsel was improper, and constitutes reversible error. (3) The alleged confession of appellant, and amended statements, were illegally admitted into the evidence."

## I

Appellant, in apt time, filed motion to quash the information alleging that Amendment 21 of the Arkansas Constitution violated the provisions of Amendment Fourteen of the Constitution of the United States. This identical question has been settled against appellant's contention by this court in *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307, wherein we said: "* * * appellant claims that prosecuting him by information is violative of his rights under both the State and Federal Constitutions. Amendment 21 of the State Constitution reads: 'That all offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the prosecuting attorney.'

"This amendment has been upheld by this court against such attack as is here made, in numerous cases, some of which are: *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131 and *Smith et al* v. *State,* 194 Ark. 1041, 110 S. W. 2d 24. The United States Supreme Court has repeatedly held that a State can—if it so desires—provide for a prosecution by information instead of by indictment. ——— Appellant quotes from, and relies on, the dissenting opinion of Mr. Justice Black in *Adamson* v. *California* (decided June 23, 1947), 332 U. S. 46, 91 L. Ed. 1903, 67 S. Ct. 1672. But we must follow the majority in that case, rather than the minority. We therefore conclude that the trial court was correct in refusing to quash the information."

## II

Next appellant says that, "The trial court, in communicating with the jury by entering the jury room without the defendant or his counsel was improper and constitutes reversible error." We do not agree. The record reflects that while the jury was deliberating on the case, it appeared that some of the jurors were having difficulty in deciding whether appellant should be sentenced to life imprisonment or death and, says appellant, "Upon being informed of a request for permission

to ask the court a question, and upon agreement of counsel for the State and appellant, the court and the reporter went into the jury room,'' whereupon the following occurred:

" 'BY MR. ROWLAND:. Judge, you may not be able to answer this question, and I will withdraw it if you can't. There might be one thing that would help here. In a life sentence, do you know approximately the average time served when a man receives a life sentence? BY THE COURT: No. BY MR. ROWLAND: That might help. BY THE COURT: I can't answer that. In response to that question, gentlemen, I will say this. Do not concern yourselves with that question. If you say life, as far as you are concerned, it is life. If clemency is later shown, it will have to be shown by the executive branch of the government, and not by you, and you should really not consider that phase of it. . . .' And there followed in concluding the first appearance before the jury in the jury room: 'BY MEMBER OF THE JURY: The way this started, we were all unanimous on guilty. Now, if we can't arrive at the penalty, is that a hung jury? BY THE COURT: Yes, sir, that is a hung jury. The mere fact that it would be a hung jury should not influence any member of this group in what your decision would be. Do not worry about that. I don't mind trying lawsuits; that is my job. If it is a hung jury it would have to be tried again. That doesn't go into the merits of it. You decide those two questions strictly on the law and the evidence, and whatever the answer to that is, you satisfy your own conscience and the court will be satisfied and happy. If you need further information, gentlemen, let me know.' And, again the court and reporter returned to the jury room to find that the jury was deliberating on the matter of punishment, and here follows the unusual question: 'BY MR. GARDNER: We have taken another vote after quite a bit of discussion, and we are eleven to one. We have finally come to the conclusion that we will be in agreement if we can find out what the maximum penalty would be. Is that possible? Everybody will be in agreement if the law could tell us what the maximum

penalty is. Is it life imprisonment, or the second choice with the electric chair? Do you understand what we are trying to get at? BY THE COURT: I don't believe—. BY MR. ROWLAND: The maximum penalty. There is some doubt in a few—at least one person's mind—which would be worse, life or death. BY THE COURT: That is a matter for you to decide. BY MR. GARDNER: The law doesn't state that. BY THE COURT: No, no, sir, the law doesn't say. The law simply says that the penalty shall be life imprisonment in the event of a finding of guilty, or the penalty shall be death in the event of a finding of guilty. It leaves it to the jurors to decide which of those penalties shall be inflicted.' And there followed the question: 'BY MEMBER OF JURY: Judge, if you please, the question is which is the more severe punishment, life imprisonment, or death? That is the question, if you can answer that question. BY THE COURT: I can answer you in my own mind. I don't know what the law books, offhand, say. That is a novel question. BY MEMBER OF THE JURY: That is what we are faced with. BY THE COURT: I wouldn't hesitate to answer it, if I had an opportunity to confer with counsel. Anything that transpires between the jury and the court has to be known by the defendant or his counsel, and let me check that please.' And, now we come to the report of the return of the court for the last jury room conference, by agreement of counsel for the State and the defendant, which ended as the point of no return: 'BY THE COURT: After conferring with counsel, the court reporter will read a brief statement which the court prepared with the agreement of counsel in answer to the question propounded a minute ago. BY THE COURT REPORTER: (Reading) Gentlemen of the Jury, you have asked the court to tell you at this state of your deliberations which is considered in law to be the most severe penalty. Whether it is death by electrocution, or whether it is life imprisonment. Our statutes provide that every person convicted of murder in the first degree shall suffer death or life imprisonment. It is for you, the jury, to say which of these two penalties should be inflicted, the severity of

either of those punishments is a matter for each of you to decide to your own satisfaction. BY THE COURT: Gentlemen, are there any other questions? BY MEMBER OF THE JURY: You didn't help us much. BY THE COURT: I am sorry, but I have got to go by the law. Suppose I give you about ten minutes and then I may call on you to report to the court. BY MEMBER OF THE JURY: We will stay longer than that, if necessary. BY THE COURT: As far as that goes, gentlemen, I will stay until the cock crows in the morning, if you want to. Don't hurry on my account. As long as you feel there is a reasonable chance to come to some conclusion and reach a verdict, I will be right here, and happy to stay with you.' "

It thus appears undisputed that appellant agreed to the court's entering the jury room, as indicated, and he points to no evidence in the record tending to show that anything was said or done prejudicial to the rights of appellant. Our statute, 43-2139 Ark. Stats. (1947), on this question provides: "After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties." Here the trial judge, after conferring with both counsel for the State and defendant and with their approval, went into the jury room with the court reporter and instructed the jury, as indicated. He then returned to the court room and with the assistance and agreement of both counsel for appellant and counsel for the State, drafted additional instructions, returned to the jury room and read it to them. We are convinced, that on the record here, appellant, by agreeing to the actions of the court, waived his right to challenge such actions unless such acts were shown to be so harmful or prejudicial to his rights as to constitute error and, as indicated, we hold, in the circumstances, that the court did nothing prejudicial. What we said in *Aydelotte* v. *State,* 177 Ark. 595, 281 S. W. 369, in a somewhat similar

situation, applies with equal force here. There this court said: "* * * The most serious question in this case is whether or not the court erred in telling the foreman of the jury in the hall of the courthouse, apart from his fellows, in answer to a question propounded to the judge by the foreman, that the jury could give less than one year for the lowest degree of homicide according to the instruction twice given to the jury. If this were all the record showed, it would undoubtedly be reversible error because contrary to Sec. 3192, C. & M. Digest, which provides: 'After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court the information required must be given in the presence of, or after notice to, the counsel of the parties.' The provisions of the above statute are mandatory, and where the facts call for an application of its provisions, unless the rulings of the court comply with the statute, they will constitute prejudicial error. The design of the lawmakers in the enactment of this statute was to protect defendants on trial as well as the State, after causes have been finally submitted to the jury for its deliberation and verdict, against any further steps being taken in the case in regard to the evidence or the law unless in open court and after notice to the counsel of the respective parties. While the records show that the communication between the foreman of the jury and the trial judge occurred in the hall of the courthouse, yet the record further shows that appellant's counsel was standing within thirty feet of the judge and the foreman of the jury at the time, and, immediately after the communication, the judge informed appellant's counsel of such communication. The counsel stated to the judge it was all right, but he wished to save his formal exceptions. Even this would not have been a compliance with the statute if nothing further had been done, but, after the jury had returned into court with its verdict, and before the court had received the same, the court informed the jury of the communication that the judge had with the

foreman, and inquired of them if such was their understanding of what had happened, and asked them if the conduct of the judge and the foreman had exerted any influence on them in reaching their verdict, and they answered that it had not. Thus it appears that the communication between the judge and the foreman of the jury was repeated in the presence of the jury and counsel in the court room before the verdict was received and announced. Counsel for the respective parties were thus notified of what had taken place, and what was then taking place, in open court, and they were then given an opportunity to register any objection they had or might have had to the procedure, and they offered none. Counsel for appellant was immediately informed by the presiding judge of the communication between him and the foreman, and given an opportunity then to request that the jury be brought into open court and that the same information be there given the jury as had been given to its foreman, and counsel for appellant did not make such request.

"It occurs to us that the error of the trial judge in communicating with the foreman of the jury in the hall of the courthouse was fully cured by repeating the communication in the presence of counsel and jury in open court before the jury's verdict was received and announced, when appellant's counsel were given an opportunity to then and there offer any objection they had to the communication. *Wawak & Vaught* v. *State,* 170 Ark. 329, 279 S. W. 997. The statute was complied with both in letter and spirit, and therefore no prejudicial error resulted."

### III

Appellant says the court erred in admitting the alleged confession of appellant and amended statements and confessions of James M. Moore, James Boyd, and Willie H. Byrd. It appears that this same objection of admitting confessions of Boone's codefendants was raised in the very recent case of *Moore* v. *State,* 229 Ark. 335, 315 S. W. 2d 907. We there said: "This evidence of the statements by the other prisoners in Moore's presence

tending to implicate him in the crime was admissible testimony under our holding in *Martin* v. *State,* 177 Ark. 379, 6 S. W. 2d 293, wherein we said: '* * * it is a general rule that the statements of one accomplice made in the presence and hearing of another, which are not contradicted by him, are admissible in evidence against him as an admission on his part for his failure to contradict them. *Polk* v. *State,* 45 Ark. 165; *Ford* v. *State,* 34 Ark. 654.' In 20 Am. Jur. 428, 'Evidence,' Sec. 493, the general rule is stated: 'The rule precluding the use of the confessions of co-conspirators and codefendants as evidence against those not making the confessions is limited to confessions made in the absence of such other defendants. A confession of a co-conspirator or codefendant made in the presence of the accused and assented to by him, impliedly or tacitly by his silence or conduct, is admissible against him, upon the same principles which permit the introduction of evidence that the defendant stood silent when accused of crime, but it must appear that he did assent to the confession.' "

It is undisputed that appellant made and signed a confession. He denies, however, that he voluntarily made it. The deputy sheriff of Miller County, in this connection, testified that he took charge of the appellant and his accomplices, Moore, Byrd and Boyd, at Texarkana and with other officers transported them to the prosecuting attorney's office at Arkadelphia. He further testified that appellant, without any promise of immunity or reward and without being threatened or abused in any manner, voluntarily made the confession. The deputy sheriff's testimony was corroborated by Mrs. Merrill, the stenographer who transcribed it, and Max Tackett, the other officer present. In the confession the appellant admitted that he was not mistreated, that he had not been threatened and had been promised nothing by way of reward or leniency. This issue, as to whether Boone's confession was voluntary, was properly submitted to the jury in the court's instruction No. 12 in accordance with our holding in *McClellan* v. *State,* 203 Ark. 386, 156 S. W. 2d 800, where we said: "In such cases the practice approved by us, which was followed in the instant case,

is for the court to hear the testimony in the absence of the jury as to the circumstances under which the confession was given, and if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made.''

Finally it appears that at the close of the State's case, appellant objected to the action of the court in overruling his motion for a directed verdict on the ground that the State failed to prove the *corpus delicti,* failed to prove any criminal agency and that the confessions were not legally admitted in evidence. Our statute provides (Ark. Stats. 43-2115): ''A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed.'' In construing this statute, we held in *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, that: ''An extrajudicial confession of a defendant accompanied by proof that the offense was actually committed by someone is sufficient to warrant his conviction, whether there is any other testimony tending to connect him with the crime or not.'' In the present case we think the evidence, even independent of Boone's confession, was sufficient to sustain the verdict of first degree murder. The evidence, as shown in a stipulation of facts, reflects that Mr. Hamm left his home in the morning of May 9th to go to Texarkana. On his way home, about 10 o'clock, he stopped at a service station on Broad Street, Texarkana, where he rested for about thirty minutes. He then proceeded up highway No. 67 to a point near Jack Miller's courts where he ''hitched'' a ride on a truck driven by Henry Byrd and occupied by James Moore, James Boyd and appellant, Rogers Boone. He was last seen alive on his way home. He was missing until his body was discovered May 15th. All four occupants of the truck showed the officers where Hamm was assaulted and murdered. Hamm's billfold, with $10.11 missing therefrom, was found empty about 200 yards from the scene of the murder. We think that the admitted fact that Hamm's body was found at the

place indicated by appellant and the other three Negroes with his billfold found empty would warrant a jury in finding that Hamm had been murdered and robbed and sufficient to sustain Boone's conviction. The fact that the body was found where Boone said the assault took place certainly connects him with the crime and sustains his confession. Citing *Shufflin* v. *State,* 122 Ark. 606, 184 S. W. 454. We conclude therefore that the evidence was sufficient to support the verdict.

This being a capital case, it is our duty to consider all alleged errors and objections and after having done so, we find no error that would require reversal of this case.

Accordingly, the judgment is affirmed.