TURNEY *v.* STATE

5074                                    395 S. W. 2d 1

Opinion delivered October 25, 1965.

[Rehearing denied November 22, 1965.]

*James L. Sloan,* for petitioner.

*Bruce Bennett,* Atty. General, By: *Joe Bell,* Asst. Atty. General, for respondent.

CARLETON HARRIS, Chief Justice. This is a motion by Henry Turney for permission to file a petition for a writ of error *coram nobis* in the Circuit Court of Lonoke County, Arkansas. Turney was convicted of the crime of burglary and grand larceny on Nevember 10, 1962, and he was sentenced to serve a term in the Arkansas Penitentiary. On January 27, 1964, this court affirmed the

conviction, and a petition for reharing was denied on March 9, 1964. Subsequently, on petition of Turney, this court stayed its mandate until the present motion could be briefed and passed upon. In filing this motion, counsel for Turney argues several points, which we proceed to discuss, though not in the order listed in petitioner's brief.

It is argued that Turney was deprived of his rights under the Fifth Amendment to the Constitution of the United States by virtue of the fact that he was tried and convicted upon an Information filed by the Prosecuting Attorney, rather than upon an Indictment rendered by a grand jury. We do not agree with this contention. The United States Supreme Court, in *Hurtado* v. *California*, 110 U. S. 516, and subsequent cases, has held that it is proper for a defendant to be tried in a state court upon an Information. We, likewise, have rejected this argument on several occasions. *Moore* v. *State*, 229 Ark. 335, 315 S. W. 2d 907, *Boone* v. *State*, 230 Ark. 821, 327 S. W. 2d 87.

It is asserted that Turney's rights were violated under the Fourth Amendment provision against unlawful search and seizure. This point was raised on direct appeal, and decided by this court adverse to petitioner's contention. There, after a thorough discussion of the contention, we held that Turney waived any rights (here allegedly violated) by giving his consent to the search, and we see no need to reopen this question.

It is next contended that Turney was not advised of his rights under the Fifth Amendment to the Constitution of the United States, and that he was not permitted to have the advice of counsel pursuant to the Sixth Amendment to the Federal Constitution.

It is also urged that certain admissions, which petitioner construes as a confession were involuntarily made. Since these two contentions are so closely related, we will discuss them together.

Petitioner relies upon the case of *Escobedo* v. *Illinois,* 378 U. S. 478. Admittedly, Turney was not repre-

sented by counsel at the time of his arrest, and the evidence reflects he was not advised by the officers that he would not have to make any statement.

We do not think that *Escobedo* extends to the circumstances in the case at Bar. The facts in *Escobedo* are far different, and are, we think, distinguishable from the facts in the instant case. In *Escobedo,* the defendant was arrested by police officers in the evening, along with his sister, and taken to police headquarters. He was handcuffed, and was told that another person, then in custody, (DiGerlando) had named him (Escobedo) as the one who shot the deceased. Uncontradicted testimony from the defendant was to the effect that he was told by detectives that ''they had us pretty well, up pretty tight, and we might as well admit to this crime.'' The defendant responded that he would like to have advice from his lawyer. The lawyer, who subsequently testified, went to police headquarters, and was told by the officer in charge that he could not see the defendant. The attorney requested permission from several other officers, identifying Escobedo as his client, but he was still refused permission to consult with the defendant: ''He said I couldn't see him because they hadn't completed questioning.'' Finally, the attorney left headquarters at 1:00 A.M., still without seeing the defendant. Escobedo testified that, during the course of the interrogation by the officers, he repeatedly asked to speak to his lawyer, but was told that his lawyer ''didn't want to see him.'' The testimony of the police officers confirmed these accounts in substantial detail. Other testimony reflected that the defendant, 22 years old, was handcuffed, and ''was nervous, upset, and agitated;'' further that one of the officers, acquainted with Escobedo's family, told the defendant that, if he made a statement against DiGerlando, Escobedo and his sister could go home. Defendant claimed that he made a statement because of this assurance, and it was this statement that was at issue in the case.

We see no resemblance in the facts related and the facts that are presently before us. Here, Officer Caldwell, of the State Police, arrested Turney at his resi-

dence on a Monday at approximately 4:30 A.M., serving a warrant of arrest, which had been issued by a Justice of the Peace. Caldwell testified that he asked Turney ''point blank why would a man living in a house like he was, with his job, get involved in something like this, and he said he didn't know and that he must be out of his mind. He then admitted his part in the theft to me and told me at that time where the property was.'' Thereafter, Turney directed the officers to the location of the stolen property. It will be thus observed that Sergeant Caldwell was not carrying out a process of interrogation for the purpose of obtaining incriminating statements.[1] The simple statement, above quoted, was responded to by the spontaneous admission of guilt by Turney. Petitioner was not denied the service of an attorney, nor was an attorney even requested, as in *Escobedo*. No promises were used; no nerve-racking interrogation was attempted, nor mistreatment rendered, in order to obtain the statement from Turney; in fact, there is no evidence at all of any sort of coercion or duress.

Surely it cannot be said that, under the facts here enumerated, petitioner was deprived of any constitutional right. We do not think that, under *Escobedo, any* statement or remark of a defendant, though without counsel, is automatically precluded. Turney does not appear to have been completely ignorant of legal procedure, for at arraignment he entered a plea of not guilty, and was advised that he should obtain an attorney. He thereupon employed competent counsel, who represented him in the trial of the case.

Sergeant Caldwell detailed all of the facts heretofore enumerated to the jury, and there was no objection to this testimony. In fact, it does not appear that anyone, including Turney himself, made any contention at the trial that any statements were involuntarily made.

We have concluded that movant was not deprived of any constitutional right, either under the Federal or state constitutions, and it follows that the motion seeking

---

[1] Sergeant Caldwell testified: "It was not necessary to interrogate these men [Turney and Williams], because they voluntarily gave us the information."

permission to file a petition for a writ of error *coram nobis* is denied.