## SYLVESTER POLK V. STATE.

## HENRY POLK V. STATE.

1. CRIMINAL PRACTICE: *Proceedings in absence of defendants.*

   A defendant in a criminal case should be present in court when an order for change of venue is made, but the making of such order in his absence, upon his own petition, is not an error for which a conviction will be reversed.

2. SAME: *Exceptions to incompetent jurors: When waived.*

   Exceptions to incompetent jurors become immaterial when the panel is completed before the defendant exhausts his peremptory challenges.

3. SAME: *Incompetent jurors.*

   Persons offered as jurors, who state upon their *voire dire* that they have formed an opinion as to the guilt or innocence of the prisoner which it would require evidence to remove, are incompetent, and should be rejected, notwithstanding that they further state that they can give the accused a fair and impartial trial. *Gasey v. The State, 37 Ark.*, overruled on this point.

4. SAME: *Examination of jurors.*

   In examining jurors upon their *voire dire* for a criminal trial the court is the trier, and should permit any question to be answered which seems to be asked in good faith to sift the truth and search the consciences of the jurors as to their competency.

5. CRIMINAL EVIDENCE: *Statements of an accomplice.*

   The statements of an accomplice in a homicide, made in the absence of the accused after the termination of the criminal enterprise, are not evidence against the latter.

6. SAME: *Same.*

   Damaging statements of one accomplice made in the presence of another and not contradicted by him are admissible against him as a tacit admission inferred from his acquiesence in them. But such implied admissions are to be received with great caution, affording at best but a weak presumption of guilt.

7. SAME: *Of falsehood in motion for continuance.*

   Upon trial of one for a crime it is not permissible for the state to read his affidavit for a continuance at a former term and then to prove that the statements in it were false.

8.   INSTRUCTIONS:   *Weight of evidence is for the jury, not the court.*
 Circuit judges should avoid, telling the jury what importance to attach to
 particular evidence or to the absence of it.   It is for the jury and not the
 court to determine its importance or its weight.

APPEAL from *Pike* Circuit Court.
Hon. H. B. STUART, Circuit Judge.

*J. E. Borden* for Appellant.

1.   Confessions, to be admissible against the party making
them, must be voluntary and not in response to threats, prom-
ises or intimidation.   Appellant was not present, and had no
opportunity to sanction, by his silence or otherwise, nor in any
manner to deny.   Besides, these statements or declarations of
Kuykendall took place at a period long subsequent to the facts
he proposed to relate, and were merely narrative of past occur-
rences, mere hearsay.   *Greenl. Ev., 110–11.*

2.   The court erred in accepting as jurors the parties who
stated that they had formed opinions, and that it would require
evidence to remove them, thus forcing appellant to exhaust his
challenges, and go to trial before biased jurors.   He was enti-
tled to an *impartial* jury.

3.   The application for continuance should not have been
admitted to the jury.   It only tended to show that appellant
had sworn falsely, and thus prejudice the jury against him.

4.   The record fails to show that appellant was present
when the change of venue was granted.

5.   The court erred in limiting counsel to forty minutes to
open the case.   This was an abuse of discretion.

6.   When a jury have weighed and considered a circum-
stance proper to be weighed and considered, it is for them,
not the court, to determine whether " it tends to show his
guilt " or otherwise; whether " it is a circumstance of *great*

Sylvester and Henry Polk v. State.

*weight* against him," or whether it is of little weight or no weight at all.

*Dan W. Jones*, Attorney General, *contra.*

It was not necessary for appellant to be present when the change of venue was granted. *63 Mo., 159.*

Even if the testimony as to the confessions of Henry Polk and Kuykendall, are for any reason inadmissible, the appellant was not injured thereby, for the same things were put in evidence by the testimony of Oscar Pope. See *28 Ark., 125.*

As to the incompetency of the jurors objected to, they all answered that they could give defendant a fair and impartial trial without prejudice, etc. This was sufficient; as appellant does not allege or show that he was injured by the jurors accepted. *37 Ark., 67; 30 Ib., Benton v. State; 13 Ib., 742.*

The motion for a continuance properly read to the jury. *20 Ark., 53.*

A confession made in the presence of the accused and not contradicted by him, is considered to be acquiesced in by him. *1 Bish. Cr. Pro., Sec. 1254; 25 Ark., 92.*

SMITH, J. The grand jury of Howard county preferred a joint indictment against the appellants and Monroe Kuykendall for the murder of Frank Ward. On their application the venue was changed to Pike. Kuykendall died before the trial came on. The other two defendants were separately tried and convicted, the one of murder in the first degree, and the other of murder in the second degree.

A reversal is now claimed because the record does not affirmatively show that they were present in court when their petition for a change of venue was granted.

Sylvester and Henry Polk v. State.

1. Change of venue in absence of defendant.

The supreme court of Missouri, in *State v. Elkins, 63 Mo., 159*, held that an order changing the venue was not such a substantive step in the progress of the cause as required the personal presence of the defendants in court when it was made. But the previous decisions of this court have been extremely jealous of the rights of the accused on this point. And it is certainly the better practice that he be brought into court upon such an occasion. However, we should not reverse the judgment for this cause, as it is plain that the defendants lost no advantage and could not possibly have been prejudiced by their absence. The court did nothing in the premises except to grant their own request. *Bearden v. State. 44 Ark., 331*.

2. Exceptions to jurors.

In the impaneling of the trial juries in the two cases, sundry exceptions were reserved to the rulings of the court in passing upon the qualifications of persons who were tendered as jurors. In the case of Henry Polk, these exceptions become immaterial, as it appears that the panel was completed before the defendant had exhausted his peremptory challenges. But Sylvester was forced to challenge peremptorily, jurors who were offered, and who, as he alleges, were laboring under actual bias, but whom the court nevertheless pronounced to be competent. He thus exhausted his challenges before a full jury was obtained, and after such exhaustion was compelled to accept such talesmen as he could not challenge for cause.

The nature of the exceptions will appear from the following extract from the bill of exceptions:

3. Incompetent jurors.

"During the said drawing John T. Anderson, being one of the names drawn by the clerk, stated on his *voire dire* that he had heard one of the state's witnesses testify on the trial of Henry Polk last week, jointly indicted with this defendant for this offense, and that said testimony had made some impression on his mind, but he had formed no opinion as to the guilt or innocence of this defendant; and the court ruled and refused to allow him to answer the question of defendant as to whether

it would require evidence to remove said impression from his mind; to which ruling and refusal the defendant at the time excepted and challenged·the juror. And also the name of J. B. Sparks, who stated, also upon his *voire dire*, that he had formed an opinion as to the guilt or innocence of the defendant, from having heard a statement made by a person who purported to state the facts, and that it would require evidence to remove said opinion; and the court, holding him to be a competent juror, refused to allow him to answer the question of defendant as to whether he could go into the trial as a juror prepared to give the prisoner the benefit of the presumption of innocence before he heard any of the testimony; to which ruling of the court the defendant excepted and challenged the juror. And J. R. Rounds, another name drawn, was asked by the defendant 'if he could go into the jury-box presuming the defendant to be innocent,' and 'if, from his knowledge of his own mind, he believed himself an unbiased, unprejudiced, qualified juror;' and the court held and ruled that he should not answer the questions; to which holdings and rulings the defendant at the time excepted and challenged the juror. And P. A. Parnell, G. W. Moore and W. D. Orrick, drawn by the clerk as aforesaid, who severally stated that they would, if taken, go into the jury-box with an opinion as to the innocence or guilt of the accused which it would require evidence to remove from their minds. The court held and determined that they were competent jurors, to which holding and determination, the defendant at the time excepted and challenged the jurors. And all these several persons, in answer to the question whether they could as jurors give the defendant a fair and impartial trial, without prejudice to his rights, notwithstanding what they had heard, severally answered that they could."

Our bill of rights (*Constitution of 1874, Art 2, Sec. 10,*) guarantees to all persons accused of crime the right to a trial by an impartial jury. Here four persons were declared to be

competent to sit as jurors in a capital case, when, by their own statements, it appeared that they had formed an opinion as to the guilt or innocence of the defendant, which it would require evidence to remove. In other words, they admitted that they had prejudged the case and would go into the jury-box with a leaning for or against the prisoner. That a juror has formed any opinion in such a case renders him *prima facie* incompetent, and it is for the state to show that such opinion is based on rumor and not of a nature to influence his conduct. But one who leaps in advance both of evidence and the law, and settles in his own mind the question of guilt, is not fit to be a juror in the cause. The juror must be indifferent between the state and the prisoner. The burden of eradicating preconceived opinions upon the merits ought not to be cast upon either party. The fact that the jurors further said that they could try the case impartially was entitled to no consideration, in the face of their admissions that their minds were pre-occupied by impressions of the case. No reliance is to be placed on such declarations. *Stewart v. State, 13 Ark., 720; Meyer v. State, 19 Id., 156; 1 Bishop Cr. Pro., Sec. 910; People v. Gehr, 8 Cal., 359; People v. Weil, 40 Id., 268.*

In *Benton v. State, 30 Ark., 328*, and in *Wright v. State, 35 Id., 639*, the prisoner did not exhaust his challenges and, therefore, no injury accrued. In *Dolan v. State, 40 Id., 454*, the opinions were formed from reading the newspapers and were not so deep-seated as to require evidence to remove them. What is said in *Casey v. State, 37 Ark., 67*, goes further than any case in our reports on this subject. It does not appear from the report of that case that the objectionable jurors actually sat upon the trial, or that the prisoner exhausted his challenges in getting rid of them. But the intimation that it is in the discretion of the circuit court to admit a juror who states that he has formed such an opinion about the case as can be removed only by evidence, provided he further states that he

can give the prisoner a fair trial, and that such discretion is not reviewable, is erroneous.

We are also of the opinion that the prisoner was unduly hampered by the court in his efforts to require the jury to purge themselves of any taint of bias or prejudice. The object of the examination of jurors, touching their qualifications, is to ascertain whether they are impartial. The court is the trier and should permit any question to be answered which seems to be propounded in good faith for the purpose of sifting the truth and searching the consciences of the jurors. . *4. Examination of jurors.*

On the trial of Sylvester Polk certain declarations made by Kuykendall, implicating the defendant, were put in evidence over objections. Their admission cannot be justified by any rule of evidence known to us. They were made in the absence of the defendant and after all the parties who were suspected of complicity in the murder had been arrested. They were not admissible even upon the theory that a conspiracy had been established; for they were not made during the pendency of the criminal enterprise and in furtherance of its objects. Consequently they were merely narrative of past occurrences and hearsay. *1 Gr. Ev., Secs. 110, 111.* *5. CRIMINAL EVIDENCE:— Statements of accomplice.*

On the trial of both defendants certain statements, in the nature of confessions, made by Henry Polk, were admitted against objections. Any voluntary statement made by Henry, and tending to show he knew something of the matter, was proper evidence against him. And if made in the presence of Sylvester, and uncontradicted by him, they are also receivable against him, as a tacit admission inferred from his acquiescence in the verbal statement of another. But such implied admissions are to be received with great caution, affording, at best, but a weak presumption of guilt. *Ford v. State, 34 Ark., 654; Williams v. State, 42 Id., 382.* And in this connection we observe that the court below attached too much consequence to these statements; for in its fifth instruction, given at the instance *6. SAME:— Same.*

of the state, it told the jury to treat and consider them as if made by Sylvester himself.   This was putting it too strongly.

7. SAME:—
Of falsehood in
affidavit for
new trial.

Upon both trials the state was permitted to read an affidavit for continuance made by all of the defendants before severance, and then to prove by witnesses that the facts stated in it were false.   This evidence had no tendency to prove the issues, but only to show that the prisoners had committed perjury in swearing to the motion.   It was, therefore, calculated to prejudice them in the minds of the jurors and should have been excluded.   *Burris v. State, 38 Ark., 221.*

It was proved on both trials that, on the night after Ward disappeared, Sylvester rode the missing man's horse down into Sevier county, thirty-five miles distant, where he exchanged it for a mare, but left the mare there; and that Henry afterwards went for the mare, brought her to his own home and sold her to a neighbor.   Ward's horse was afterwards recovered and identified and the mare that had been given in exchange was restored to her proper owner.   Possession by the accused of the fruits of a crime raises a presumption of guilt.   But it is insisted that the testimony fails to trace Ward's horse to the possession of Henry Polk, or to connect him sufficiently with the transaction by which Sylvester acquired such possession. But the circumstance that the horse is found in the hands of Sylvester, who is unable to give any explanation of his possession consistent with his innocence, taken in connection with the unaccountable disappearance of Ward, affords some slight proof that Ward met with foul play.   Both of the defendants had the opportunity to commit the crime if one was committed.   And the fact that Henry assumed to control and dispose of the mare that was received in exchange, is proper to be weighed by a jury in determining his participation in the act by which Ward was deprived of his property, as well as of his life.

8. INSTRUC-
TIONS: Weight
of evidence is
for jury.

The juries, which tried the two cases respectively, were told by the court that, if the defendants had failed to prove the de-

fense of *alibi* set up by them, and if they should believe the evidence adduced in support of it was fabricated, this was a circumstance of great weight against them. The admissibility of testimony is a question for the court. After it is admitted, its effect, and the inferences to be drawn from it, are for the jury to determine exclusively in the first instance. Circuit judges cannot, therefore, be too cautious in their charges, to avoid telling the jury what degree of importance should be attached to a particular kind of evidence, or to the absence of it. It is for the jury, and not the court, to say that evidence makes for or against a party, or that it is of great weight, or little weight, or no weight at all.

As the cases must undergo re-examination, we have purposely refrained from commenting on the testimony, further than was necessary to elucidate the points upon which, as we conceive, the court fell into error.

The judgments are reversed and new trials are awarded in both cases.