MOORE *v.* STATE.

4891                                    315 S. W. 2d 907

Opinion delivered July 1, 1958.

[Rehearing denied September 29, 1958.]

W. *Harold Flowers,* for appellant.

*Bruce Bennett, Atty. General; Thorp Thomas, Asst. Atty. General,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a death sentence case. In *Moore* v. *State,* 227 Ark. 544, 299 S. W. 2d 838 the present appellant and three others had been convicted for the murder of M. R. Hamm. We reversed the convictions for the reasons stated in the majority opinion in that case. The facts surrounding

the killing of Mr. Hamm and the appellant's alleged participation are stated in our opinion in the first appeal; so we do not again recite them.

On remand, James Moore (present appellant) obtained a severance, made no claim for change of venue, and upon trial was again convicted and sentenced to death. This appeal ensued; and, being a capital case, we have reviewed every objection in the record. (See § 43-2723 Ark. Stats.) We group the objections and assignments[1] in convenient topic headings:

I. *Appellant's Motion To Quash The Information.* Appellant was tried on an information filed by the Prosecuting Attorney instead of an indictment returned by a Grand Jury; and he says:

"Again is presented to the Court the contention that Amendment No. 21 to the Constitution of the State of Arkansas violates those liberties provided for in the Constitution of the United States of America. The more recent interpretations of the due process clause of the Federal Constitution activates interest in the question of whether or not a State may, if it so desires, provide for prosecution by Information rather than Indictment."

The contention here made has been rejected in many of our cases. In *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307, we said:

"Appellant was tried on an information filed by the prosecuting attorney, rather than on an indictment returned by a grand jury; and appellant claims that prosecuting him by information is violative of his rights under both the State and Federal Constitutions. Amendment 21 of the State Constitution reads: 'That all offenses heretofore required to be prosecuted by in-

[1] Some of the matters discussed in this opinion have been considered in several recent opinions of the United States Supreme Court, which we have carefully studied, to-wit: *Payne* v. *Arkansas* (opinion of 5/19/58), 356 U. S. 560, 2 L. Ed. 2d 975, 78 S. Ct. 844; *Thomas* v. *Arizona* (opinion of 5/19/58), 356 U. S. 390, 2 L. Ed. 2d 863, 78 S. Ct. 885; *Hoag* v. *New Jersey* (opinion of 5/19/58), 356 U. S. 464, 2 L. Ed. 2d 913, 78 S. Ct. 829; and *Eubanks* v. *Louisiana* (opinion of 5/26/58), 356 U. S. 584, 2 L. Ed. 2d 991, 78 S. Ct. 970.

dictment may be prosecuted either by indictment by a grand jury or information filed by the prosecuting attorney'. This amendment has been upheld by this court against such attack as is here made, in numerous cases, some of which are: *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131 and *Smith et al.* v. *State,* 194 Ark. 1041, 110 S. W. 2d 24. The United States Supreme Court has repeatedly held that a State can — if it so desires — provide for a prosecution by information instead of by indictment. Some of these cases are: *Hurtado* v. *California,* 110 U. S. 516, 28 L. Ed. 232, 4 S. Ct. 111; *Bolln* v. *Nebraska,* 176 U. S. 83, 44 L. Ed. 382, 20 S. Ct. 287; and *Gaines* v. *Washington,* 277 U. S. 81, 72 L. Ed. 793, 48 S. Ct. 468.''

The United States Supreme Court refused *certiorari* in the case of *Washington* v. *State,* 335 U. S. 884, 93 L. Ed. 423, 69 S. Ct. 232. So our holding remains the same as in *Washington* v. *State.*[2]

II. *Motion For Continuance.* The trial of appellant's case was duly set to commence on July 10, 1957; and on the morning of that date the appellant filed a motion for continuance, claiming:

''On a late news telecast over television station KCMC at Texarkana, Arkansas, July 9, 1957, Bill Gill, newscaster, told viewers and listeners living in a wide area covering all of Miller County, Arkansas and much of the four State area which it serves, that Judge Lyle Brown had granted permission for the televising of the trial of the defendant scheduled to begin on July 10, 1957 at 9:00 A. M., in granting permission for the filming and recording from the corridors of the Miller County Courthouse. The defendant, by his attorney, moves for a continuance to ascertain the effect of the sudden and dramatic interest created by such an act, upon the minds of the inhabitants of Miller County, Arkansas, for a possible move to ask the Court for a change of venue.''

[2] See also *Smith* v. *State,* 218 Ark. 725, 238 S. W. 2d 649.

Testimony on the motion was duly heard. It disclosed that the defendant's attorney had agreed[3] that a television camera could be placed in a corridor of the Courthouse and that through a window or conduit into the Courtroom certain portions of the trial could be filmed; that the filmed portions would be edited after the trial; and that the pictures could then be televised as silent films. No cameras were stationed in the courtroom and no pictures were taken by anyone in the courtroom.[4] The motion for continuance was not because of the television itself, but because a radio newscast on the night of July 9th had stated what was to be done; and appellant's attorney wanted the trial continued to see whether the radio announcement on the night of July 9th had adversely affected his client.

The Prosecuting Attorney, the Defense Attorney, and the Trial Court arranged some sort of pickup camera outside the courtroom. The motion for continuance is not an effort by the defendant's attorney to recede

---

[3] The defendant's attorney testified in part on this point: "My name is W. Harold Flowers, an attorney representing James M. Moore, charged with First Degree Murder in the Miller Circuit Court. I have not discussed with Mr. Gill but upon one occasion in or about the chambers of the Presiding Judge the granting of permission to film and televise the proceedings in the trial of James M. Moore. In that discussion which was held during the month of June, on the Friday referred to, we talked for a few minutes and I gave more or less tentative consent to the plan to televise the proceedings; that Mr. Gill told me at that time that we would have the privilege of editing the telecast, and that they only wanted to televise the summation or the arguments to the jury.

[4] Canon No. 35 of the Code of Judicial Ethics, adopted by the American Bar Association and by the Arkansas Bar Association (see 10 Ark. Law Review p. 295), provides: "Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the court room, during sessions of the court or recesses between sessions, and the broadcasting or televising of court proceedings are calculated to detract from the essential dignity of the proceedings, distract, the witness in giving his testimony, degrade the court, and create misconceptions with respect thereto in the mind of the public and should not be permitted. Providing that this restriction shall not apply to the broadcasting or televising, under the supervision of the court, of such portions of naturalization proceedings (other than the interrogation of applicants) as are designed and carried out exclusively as a ceremony for the purpose of publicly demonstrating in an impressive manner the essential dignity and the serious nature of naturalization." We find no change in that Canon. In 11 Ark. Law Review, p. 174 there is a case note about photographing court proceedings, which article contains a review of many of the cases. Also there is a discussion about Canon No. 35 in the American Bar Association Journal for May 1957, Vol. 43, p. 419.

from that agreement: rather it is a motion for continuance to see if the announcement of the facts of the agreement had adversely affected his client.[5] We fail to see how the radio announcement could be a cause for continuance. The statutes (Ark. Stats. § 43-1705 *et seq.*) and construing cases specify the essential content and showing that must be made in a motion for continuance; and no such content or showing was here made.

III. *Motion To Quash The Panel Of Petit Jurors.* This presents the claim of racial exclusion of trial jurors in Miller County, Arkansas. The motion to quash recites, *inter alia*:

"That at all times material herein it has been, was and still is the custom in Miller County, Arkansas, to use white persons exclusively for regular Petit Jury service in any and all cases including the trials of felonies, and in selecting the current jury and the supplement thereto the Jury Commissioners substantially followed the said customs in naming only white persons to the said jury panel. The defendants allege that no Negroes are now serving on the present panel of petit jurors, and that they have been systematically excluded from serving solely because they are Negroes, and that this action constitutes discrimination and a denial to them of equal protection of the laws of the United States of America as guaranteed by Section One of the Fourteenth Amendment to the Constitution of the United States of America.

A lengthy hearing was held on this motion covering seventy pages of the transcript.[6] The evidence reflects that for several years prior to November, 1953 no Negroes had been selected on the trial jury by the Jury Commissioners, with the exception of the June 1951 term, when four Negroes were selected. There are two terms of the Miller Circuit Court each year, being the terms of June and November. The record as to Ne-

---

[5] See annotation in 39 A.L.R. 2d 1342 on continuance because of hostile sentiment.

[6] There is an annotation in 1 A.L.R. 2d 1291 entitled: "Proof as to exclusion of or discrimination against eligible class or race in respect to jury in criminal case."

groes selected by the Jury Commissioners for trial jury service from November 1953 to date of this trial is as follows:

|  | Number of Negroes Selected |
|---|---|
| November, 1953 | 3 |
| June, 1954 | 1 |
| November, 1954 | 2 |
| June, 1955 | 5 |
| November, 1955 | 3 |
| June, 1956 | 9 |
| November, 1956 | none |
| June, 1957 | 10 |

The defendant was tried at the June, 1957 term of the Court, at which ten Negroes had been selected for trial jury service. The record does not disclose the number of Negroes in Miller County who are qualified for jury service, and census figures of the total number of Negroes in the County would not indicate how many were qualified for jury service.[7]

The issue here is whether, as regards the calling of Negroes for jury service in Miller County, Arkansas, there has been either a *systematic exclusion* or a *studied evasion.* We went into this issue in considerable detail in *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307; and we there said, as regards the claim of *systematic exclusion* in Jefferson County:

". . . in the case at bar the record reflects that Negroes were selected for jury service at a special term of the Jefferson Circuit Court in March, 1947, and again at the regular term of the court in October, 1947, from which last-mentioned term comes this appeal. Thus, at the two most recent terms, including the one in which appellant's trial occurred, Negroes were selected for jury service. So, any alleged systematic exclusion of previous years certainly had been abandoned at the time

[7] In *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307, it was shown that there were 35,980 Negroes in Jefferson County, Arkansas, and that only 3,000 of these were qualified electors, which is one of the requirements for being a qualified juror. So total census figures shed no light on the qualifications for jury service under our statute.

of the trial of this case — and this abandonment was no doubt in keeping with the holding of the U. S. Supreme Court in *Hill* v. *Texas*, 316 U. S. 400, 86 L. Ed. 1559, 62 S. Ct. 1159. That case referred to grand juries, but — *a fortiori* — is also germane to petit juries. So, we hold that the evidence here sufficiently repels any inference of present systematic exclusion, since Negroes are now called for jury service."

In the case at bar, Negroes have been called for jury service in Miller County, Arkansas since 1953; so certainly no systematic exclusion has been shown.

As regards appellant's claim of *studied evasion*, we likewise conclude that the proof offered fails to substantiate such claims. In *Washington* v. *State, supra,* we said on the claim of *studied evasions:*

"The fact that the jury commissioners selected Negroes for the panel satisfies the burden placed on the State under the holding in *Patton* v. *Mississippi, supra*: and the burden then devolved on the appellant to show that the jury commissioners practiced 'evasion'. There is no such proof in the record."

Here, the record reflects that the Trial Judge positively instructed the Jury Commissioners to have Negroes on the trial jury list that was to be called to try this case. On June 19, 1957 when there was a preliminary hearing on the motion to quash the jury panel, the record reflects:

". . . said motion is held in abeyance after announcement by the Court of intention to have additional jurors selected. Whereupon the State of Arkansas elects to put James M. Moore to trial first, to which there are no objections, and this cause is continued until July 10th, 1957 to afford the Court opportunity to select additional Jurors."

Then, at the hearing on the motion to quash the panel, the Trial Court stated:

"As a matter of fact, the Court instructed the Clerk in preparing that list, to put all the Negro jurors at

the top of the list in order that there might be full opportunity, if found qualified and if not challenged either by peremptory challenge or cause, for them to serve."

And again the Court stated:

". . . the Court explained to the Commissioners that the absence of Negroes on the panel was significant to the Court, particularly in view of the fact that we were to try the Hamm case, and I instructed them to take special precaution and to make special effort to place a substantial number of Negroes on the additional special list, reminding them that those special jurors, of course, would have to meet the same qualifications as the Court had previously laid down for the selection of jurors."

Thus, the Trial Judge took every precaution to see that there were Negroes on the trial jury list in this case; and the record — instead of showing studied evasion — shows a deliberate attempt by the Trial Court in this case to fully comply with the rulings of the United States Supreme Court, which condemn racial exclusion. We, therefore, find no merit in this claim of studied evasion.

IV. *The Confession.* Appellant says: "The Court erred in admitting the confession of the appellant; and the confessions of three other co-defendants charged with the commission of the crime of which appellant was convicted." Really, there are three points argued under this one topic; and we shall discuss each.

First, we consider the question of whether there was sufficient evidence to submit to the jury the question as to whether the confession was voluntary. The burden is on the State to prove that the confession was voluntary. *Love* v. *State,* 22 Ark. 336; *Smith* v. *State,* 74 Ark. 397, 85 S. W. 1123; and *Cush* v. *State,* 180 Ark. 448, 21 S. W. 2d 616. And in determining whether a confession is voluntary the Court should look to the whole situation and surroundings of the accused. *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582; *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15.

When the State sought to introduce the appellant's confession the hearing was recessed to the Judge's chambers for the Trial Judge to see if there was sufficient evidence of voluntariness to submit the issue to the jury. Such is in accordance with our frequently stated procedure. *Charles* v. *State,* 198 Ark. 1154, 133 S. W. 2d 26; *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15; *Hendrix* v. *State,* 200 Ark. 103, 167 S. W. 2d 503. The Trial Judge correctly ruled that there was sufficient evidence offered to take the case to the jury on the voluntariness of the confession; and thereupon the hearing was resumed before the jury.

It was shown that the defendant, James Moore, and the three others thought to be implicated in the murder of M. R. Hamm, were taken into custody about 4:30 or 5:00 P. M. the afternoon of May 15th at a store near Texarkana; that the Prosecuting Attorney's office was at Arkadelphia, a distance of about eighty miles from Texarkana; that Moore and the other three accused persons were advised that they would be taken to Arkadelphia to the Prosecuting Attorney and then to the State penitentiary at Cummings Farm; that the only stop made from Texarkana to Arkadelphia was at Hope (thirty-three miles from Texarkana) for the purpose of placing a telephone call to the Prosecuting Attorney's office; that in going from Texarkana to Arkadelphia the four prisoners were on the back seat of the car and three officers were on the front seat of the car; that the prisoners slept a considerable portion of the trip from Texarkana to Arkadelphia; that they reached the Prosecuting Attorney's office in Arkadelphia about 8:00 P. M.; that in the Prosecuting Attorney's office the prisoners were served with food; that the prisoners were questioned separately and sometimes together; that Moore was advised that he did not have to make any statement; that Moore's statement was made freely and voluntarily; that the statement was signed by him; that the other prisoners likewise made and signed their statements; and that all of the prisoners were then taken to the State Penitentiary at Cummings Farm for safekeeping.

The Court Reporter who took down the statements, testified that Moore gave direct answers to the questions asked, and that the statement he signed was in his own words. The defendant testified that he was scared and, therefore, the confession was not voluntary.[s] But he admitted that he was never threatened or struck or beaten; also he admitted that there were no harsh words used by the Prosecuting Attorney. So, under the evidence as stated, and other in the record, we conclude that it was a question of fact for the jury as to whether the confession was voluntary.

The second objection argued under this topic relates to the statements that the other prisoners made regarding Moore's participation in the homicide of Mr. Hamm. There was testimony that all four of the prisoners participated in the robbery and murder of Mr. Hamm. It was shown that the statements made by the other prisoners were made in Moore's presence and not denied by him in any way. In fact, he tacitly admitted the statements to be true. This evidence of the statements by the other prisoners in Moore's presence tending to implicate him in the crime was admissible testimony under our holding in *Martin* v. *State,* 177 Ark. 379, 6 S. W. 2d 293, wherein we said: ". . . it is a general rule that the statements of one accomplice made in the presence and hearing of another, which are not contradicted by him, are admissible in evidence against him as an admission on his part for his failure to contradict them. *Polk* v. *State,* 45 Ark. 165; *Ford* v. *State,* 34 Ark. 654."

In 20 Am. Jur. 428, "Evidence", § 493, the general rule is stated:

"The rule precluding the use of the confessions of co-conspirators and codefendants as evidence against those not making the confessions is limited to confessions made in the absence of such other defendants. A confession of a co-conspirator or codefendant made in the presence of the accused and assented to by him, impliedly or tacitly by his silence or conduct, is admissible

[s] There are annotations in 85 A.L.R. 870 and 170 A.L.R. 567 on the voluntariness of confessions. Many Arkansas cases are there listed.

against him, upon the same principles which permit the introduction of evidence that the defendant stood silent when accused of crime, but it must appear that he did assent to the confession.''

We, therefore, conclude that there was no error in the Court's ruling on the point here involved.

The third and final point in regard to the confession of Moore is that his statement was obtained without taking him before a magistrate, as provided in § 43-601 Ark. Stats.[9] It is conceded by the State that after Moore was taken in custody on the afternoon of May 15th he was immediately taken to the Prosecuting Attorney's office in Arkadelphia and the signed confession obtained from him, and that it was not until May 21st that Moore was returned from the penitentiary and appeared in Court in Texarkana. Because of the above mentioned statute and the stated facts, appellant insists that the confession was not admissible.

In the case of *State* v. *Browning*, 206 Ark. 791, 178 S. W. 2d 77, we held that the statute (§ 43-601 Ark. Stats.) was directory only and not mandatory. We there quoted from Wharton on Criminal Evidence, 11th Ed. Vol. 2, p. 1023, § 610: ''The mere fact that a confession is made while the maker is in the custody of a police officer, or even while confined under arrest, is not sufficient of itself to affect its admissibility, providing that it is otherwise voluntarily made. This rule pertains equally whether the arrest is legal or illegal.''

---

[9] This Section reads: "Where an arrest is made without a warrant, whether by a peace officer or private person, the defendant shall be forthwith carried before the most convenient magistrate of the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate, and, if the offense for which the arrest was made is charged to have been committed in a different county from that in which the arrest was made, and the magistrate believes, from the statements made to him on oath, that there are sufficient grounds for an examination, he shall by his written order, commit the defendant to a peace officer, to be conveyed by him before a magistrate of the county in which the offense is charged to have been committed; or, if the offense is a misdemeanor only, the defendant may give bail before the magistrate for appearing before a court or magistrate having jurisdiction to try the offense, on a day to be fixed by the magistrate and named in the bail-bond."

Then, in the Browning case, the holding of this Court was summarized in the following language:

"The fact that the confession was obtained while the accused was being held without a warrant, and before he had been carried before a committing magistrate, does not of itself make the confession inadmissible, but is a circumstance, along with all the other facts and circumstances under which the confession was made, to be taken into consideration by the jury in determining its voluntariness."

We, therefore, find that there is no merit in this third point urged by appellant in regard to the confession.[10]

V. *Other Objections Or Assignments.* It would unduly prolong this opinion to discuss *in extenso* every objection or assignment in the record; but we have given careful consideration[11] to each, and find none to possess merit. The declarations and admissions made by Moore show his connection with the crime charged. *Wooten* v. *State,* 220 Ark. 750, 249 S. W. 2d 964. The fact that the deceased's billfold was found at the place where Moore had the officers stop to look for it tends to connect Moore with the crime and to substantiate the confession. *Shufflin* v. *State,* 122 Ark. 606, 184 S. W. 454. The evidence was amply sufficient to support the verdict; and there was no error in any of the challenged instructions.

Affirmed.

---

[10] See annotation in 19 A.L.R. 2d 1331; and annotation in 93 L. Ed. U. S. 115.

[11] Included in the record are the summation arguments of counsel to the jury; and we have also read these arguments.