BOYD AND BYRD *v.* STATE.

4946                                        328 S. W. 2d 122

Opinion delivered October 12, 1959.

[Rehearing denied November 11, 1959]

*W. Harold Flowers,* for appellant.

*Bruce Bennett,* Atty. General, by *Thorp Thomas,* Asst. Atty. General, for appellee.

E<small>D</small>. F. McF<small>ADDIN</small>, Associate Justice.   Appellants, James Boyd and Willie Henry Byrd, were convicted in the Miller Circuit Court in December 1958 of the crime of first degree murder for the homicide of M. R. Hamm.   They were each sentenced to death; and from such judgments they prosecute this appeal.

This is the second appearance of these appellants in this Court in connection with the homicide of M. R. Hamm.   In *Moore et al.* v. *State,* 227 Ark. 544, 299 S. W. 2d 838, there were four appellants, being James Moore, Rogers Boone, James Boyd (present appellant), and Willie Henry Byrd (present appellant).   After the reversal in the said case of *Moore et al.* v. *State,* James Moore obtained a severance.   He was again tried, convicted, and sentenced to death; and we affirmed that judgment in *Moore* v. *State,* 229 Ark. 335, 315 S. W. 2d 907; and the United States Supreme Court denied *certiorari* on January 26, 1959. 358 U. S. 946, 3 L. Ed. 2d 353, 79 S. Ct. 356.   Rogers Boone likewise obtained a severance; was again tried, convicted, and sentenced to death; and we affirmed that judgment in *Boone* v. *State,* 230 Ark. 821, 327 S. W. 2d 87 (opinion of September 14, 1959).

The present appellants, James Boyd and Willie Henry Byrd, waived severance and were jointly tried in December 1958, convicted, and sentenced to death, as aforesaid; and those judgments are now before us on this appeal.   This being a capital case, we have reviewed every objection in the record (§ 43-2723 Ark. Stats.); and find no objection that requires a reversal.   We discuss, however, some of the objections.

I.   *Motion To Quash The Information.*   This motion related to both of the defendants and was urged because the appellants were being tried on an information filed by the Prosecuting Attorney instead of an indictment returned by a Grand Jury.   We fully discussed

this point and held it to be without merit in *Moore* v. *State*, 229 Ark. 335, 315 S. W. 2d 907; and what we there said is applicable here.

II. *The Case Against Willie Henry Byrd.* Appellant Byrd says that his confession was illegally admitted into evidence. It was shown that M. R. Hamm died on May 9, 1956; that Byrd and the other three thought to be implicated in the murder of M. R. Hamm, were taken into custody on May 15, 1956; that the Prosecuting Attorney's office was at Arkadelphia, a distance of about eighty miles from Texarkana; that Byrd and the other three accused persons were advised that they would be taken to Arkadelphia to the Prosecuting Attorney and then to the State Penitentiary at Cummins Farm south of Pine Bluff; that the four prisoners were on the back seat of the car and three officers in the front seat; that they reached Arkadelphia about 8:00 P. M. and were served with food; that the prisoners were questioned separately and sometimes together; that appellant Byrd was advised that he did not have to make any statement; that Byrd's statement was made freely and voluntarily; that the statement was signed by him; that Moore and Boone both signed statements; and that all of the prisoners were then taken to the State Penitentiary at Cummins Farm for safekeeping.

The burden was on the State to prove that the confession was voluntary. *Love* v. *State,* 22 Ark. 336; *Smith* v. *State,* 74 Ark. 397, 85 S. W. 1123; and *Cush* v. *State,* 180 Ark. 448, 21 S. W. 2d 616. In determining whether a confession is voluntary, the Court should look to the whole situation and surroundings of the accused. *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582; *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15. When the State sought to introduce the appellant's confession, the hearing was recessed to the Judge's chambers for the Trial Judge — in the absence of the jury — to see if there was sufficient evidence of voluntariness to submit the issue to the jury. Such is in accordance with our frequently stated procedure. *Charles* v. *State,* 198 Ark. 1154, 133 S. W. 2d 26; *Brown* v. *State,* 198 Ark. 920,

132 S. W. 15; *Hendrix v. State*, 200 Ark. 973, 141 S. W. 2d 852; *Nolan and Guthrie v. State*, 205 Ark. 103, 167 S. W. 2d 503. The Trial Court correctly ruled that there was sufficient evidence offered to take the case to the jury on the voluntariness of the confession of Byrd, and, thereupon, the hearing was resumed before the jury.

We hold that there was abundant evidence to take the case to the jury as against Willie Henry Byrd; that the jury was correctly instructed[1]; that there was abundant evidence to support the conviction; and that there was no error in the record. The judgment against Byrd is, therefore, affirmed.

III. *The Case Against James Boyd.* The Trial Court refused to allow the alleged confession of Boyd to be considered in any way because one of the State's witnesses gave testimony which convinced the Trial Court that Boyd's confession was not voluntary. The said witness — a law enforcement officer — testified as to the following remarks he made to Boyd on May 15, 1956 before the body of M. R. Hamm had been found:

---

[1]The Court instructed the jury as to the confession: "Instruction No. 13. There is evidence here that the defendant Byrd made statements against interests, written, or oral, or both. Before you can consider any statement against interest as evidence, you must find:

1st.   That he did make a statement against interest.

2nd.   That the statement he did make was the one you heard on the witness stand.

3rd.   That when he made it, he told the truth.

4th.   That any statement made by him, the defendant Byrd, was voluntarily made.

"In order for a statement against interests to be voluntary you must find that it was made without hope of reward or fear of punishment. The basis of the statement, that statements against interest must be voluntary, is that the Constitution of our State says that no person shall ever be compelled to give evidence against himself." The presumption of law is that any statements made by a defendant, when he is in custody of officers, whether these officers be the sheriff, detectives, policemen, the prosecuting attorney, or any other law-enforcement officer, is involuntary and incompetent and cannot be considered by you.

"The effect of that presumption is to cast the burden of proof upon the State to prove by a preponderance of the evidence that the statements were voluntary. The State must overcome this presumption of law to your satisfaction and show that the statements were voluntary; that is, made freely without hope of reward or fear of punishment."

"Well, we were walking up and down a ditch there, for half a mile, looking for a hammer. And I was questioning him about the disappearance of Mr. Hamm. And I told him that we believed that he and this other boy, Boone, had killed him. And he denied it; and we were walking up and down this ditch, and we talked all the time about it, and I kept telling him over and over — I guess I told him a hundred times in different forms, that they had killed this man, and that they had hidden his body, and that there was a group of white people looking for him, and that they would believe the same things we believed, under the circumstances, and it would be lots better for him to go ahead and tell me about it. I pointed out to him that he would be in considerable danger if this large group of white people were to find this man's body and come to the conclusion that he had committed the crime. And we talked along that line for a long time. And finally, he says, 'I didn't do it, but I was there', or words to that effect."

Because of the foregoing testimony the Trial Court correctly ruled that Boyd's confession was involuntary, and the Court told the jury:

"Now as to Boyd, you are told that there is no confession as to Boyd and you are again admonished not to consider any testimony as respects any such confession allegedly made by him, the defendant Boyd."

The Trial Court was correct in refusing to allow the alleged confession made by Boyd to be considered by the jury. As we pointed out in discussing the Byrd confession, the burden is on the State to prove that the confession was voluntary; and in determining whether a confession is voluntary the Court should look at the whole situation and surroundings of the accused. When the law enforcement officer told this Negro prisoner that there was a large group of white people looking for him and if they found Mr. Hamm's body they would come to the conclusion that he (Boyd) had committed the crime, the voluntariness of the confession was certainly destroyed until it was shown that the Negro had

reached a place secure against any such ''large group of white people'' looking for him.

But on the night of May 15th the four prisoners, Boyd, Byrd, Moore, and Boone, were transported to the State Penitentiary south of Pine Bluff for safekeeping; and on May 18th, three days later, the Prosecuting Attorney, along with two law enforcement officers, went to the penitentiary to see the four prisoners. The statements of Moore and Boone were read to Boyd in the presence of Moore and Boone, after Boyd had been advised that if there was anything in the said statements that was erroneous, he should so state. This was three days after Mr. Hamm's body had been found; Boyd was safe in the penitentiary and secure from any possible ''large group of white people''; so any fear induced by the officer's statement of May 15th had been dissipated. In their said statements read to Boyd, Moore and Boone each stated that Boyd was in concert with them[2] and assisted in the assault and robbery of Mr. Hamm.

---

[2]Moore said in his statement: "Boyd slapped him and then I hit him. I hit him on the face. We didn't hit him too hard. Boone had one hand and Boyd was holding the other hand of the white man . . .
"Q. What was the man hit with?
A. With our fists and hands.
Q. Did you see any blood on the man?
A. Yes, around his eye was a ring and around his mouth.
Q. Was there a lot of blood?
A. Not too much.
Q. Did you get any on you?
A. No.
Q. Did any of the other boys get any blood on them?
A. No, I didn't see any.
Q. How many times did you knock the man to the ground?
A. Several times.
Q. Did the man ask you not to hit him any more?
A. Yes, he said that he would give us the money.
Q. How many times was the man knocked into the ditch?
A. Several times and then Boyd and Boone would reach down and pick him up and hit him again.
Q. How long did you all beat on this man?
A. It was not too long, about 15 minutes.
Q. Where was the man the last time you saw him?
A. Lying in the ditch on his back on the bank of the road with his feet in the ditch."
Boone said in his statement: " . . . we got out and then James Boyd grabbed him on the collar and slapped him and said what have you

In admitting this testimony of Boyd's failure to make any reaction to the statements of Moore and Boone, the Trial Court immediately cautioned the jury:

"Gentlemen of the jury, it is my duty — the Court's duty — to remind you at this time that this purports to be a statement of Rogers Boone, who is not a defendant in this trial. It is not to be considered in any manner as a statement made by either or both of these defendants, and the same rule of law applies as to the restricted area in which you may consider their reaction, if they had an opportunity to freely react to this statement, and at the close of all the case the Court will again, as a matter of precaution, admonish you relative to the law as regards this statement and the Moore statement."

Boyd made no denial of any of the statements which his co-conspirators had made in his presence, and his failure to make such denial was admissible in evidence against him. In *Moore* v. *State*, 229 Ark. 335, 315 S. W. 2d 907, we quoted from *Martin* v. *State*, 177 Ark. 379, 6 S. W. 2d 293:

" '. . . it is a general rule that the statements of one accomplice made in the presence and hearing of another, which are not contradicted by him, are admissible in evidence against him as an admission on his part for his failure to contradict them. *Polk* v. *State*, 45 Ark. 165; *Ford* v. *State*, 34 Ark. 654.'

In 20 Am. Jur. 428, 'Evidence', § 493, the general rule is stated:

" 'The rule precluding the use of the confessions of co-conspirators and codefendants as evidence against those not making the confessions is limited to confes-

---

got and then Poochie slapped him and said what have you got and I slapped him too and then James Moore slapped him too . . .

"A.  James Boyd and then James Moore hit him over the head with a board and then James Boyd slapped him and turned him loose and the man fell into the ditch and didn't get up.

Q.  How was the man lying the last time you saw him?

A.  He was lying with his feet toward the highway, on his elbows and his feet toward the road.

Q.  Where was the man's hat?

A.  Out in the ditch."

sions made in the absence of such other defendants. A confession of a co-conspirator or codefendant made in the presence of the accused and assented to by him, impliedly or tacitly by his silence or conduct, is admissible against him, upon the same principles which permit the introduction of evidence that the defendant stood silent when accused of crime, but it must appear that he did assent to the confession.'

"We, therefore, conclude that there was no error in the Court's ruling on the point here involved."

Other witnesses testified as to the four co-conspirators being together on the day of Mr. Hamm's disappearance; Hamm's body was found by information furnished by some of the conspirators; and other substantial evidence was introduced. In the instructions the Court told the jury:

"Instruction No. 14. The alleged confessions of Moore and Boone have been introduced in this case. You are instructed that it is the general rule of law that the statements of a conspirator are not admissible in the trial of a co-conspirator. However, if such statements are made in the presence of a co-conspirator, his reaction to that statement is admissible under certain conditions. "So, in this case, if you find from a preponderance of the evidence that the statements of Moore and Boone were freely and voluntarily given; and if you further find beyond a reasonable doubt that the defendants Byrd and Boyd heard and understood those statements, were called upon to freely act or reply and had an opportunity to express themselves concerning such statements, you may consider their reactions thereto.

"You are again cautioned, as the Court told you this morning, that no statements made by Moore or Boone are to be construed as being a statement of Byrd or Boyd themselves.

"Instruction No. 19. You are instructed that while it is the law of this State that all who join in the common design to commit an unlawful act, the natural and

necessary consequence of which involved the contingency of taking life, they are responsible for the homicide committed by one of them while acting in pursuance and furtherance of the common design, although it might not have been the contemplation of the parties when they conspired to commit the unlawful act and although the actual perpetrator is not specifically identified; yet, you are further instructed that the homicide, if any, must be perpetrated while in the commission of the crime of robbery and must be the natural and necessary result of the unlawful act, and if you find from the evidence in this case that the deceased, M. R. Hamm, died from any cause not the natural and necessary result of an unlawful act, you will find the defendants not guilty of murder in the first degree."

We hold that there was ample competent evidence to take the case to the jury as against Boyd; that the Court committed no error prejudicial to Boyd in its rulings; that the jury was properly instructed; and that the evidence amply supports the verdict. We, therefore, affirm the case against James Boyd, just as we did against Willie Henry Byrd.