James M. MOORE and Rogers Boone, Appellants,

v.

Lee HENSLEE, Superintendent of the Arkansas State Penitentiary, Appellee.

James Albert BOYD and Willie H. Byrd, Appellants,

v.

Lee HENSLEE, Superintendent of the Arkansas State Penitentiary, Appellee.

Nos. 16433, 16434.

United States Court of Appeals
Eighth Circuit.

March 29, 1960.

W. Harold Flowers, Pine Bluff, Ark., and Harold B. Anderson, Little Rock, Ark., for appellants.

Thorp Thomas, Asst. Atty. Gen., for appellee.

Before SANBORN, VAN OOSTER-HOUT, and MATTHES, Circuit Judges.

PER CURIAM.

James M. Moore, Rogers Boone, James Albert Boyd and Willie H. Byrd, all Negroes, were jointly charged in an information filed by the Prosecuting Attorney within and for the Eighth Judicial Circuit of the State of Arkansas, of which Miller County is a part, with murdering M. R. Hamm, an aged white man, on May 9, 1956. They were first tried together in the summer of 1956, in the Circuit Court of Miller County, Arkansas, the situs of the crime, found guilty by a jury of first degree murder, and in due time were sentenced to death. This judgment was reversed by the Supreme Court of Arkansas. Moore v. State, 227 Ark. 544, 299 S.W.2d 838.

On remand and after a severance was obtained, Moore was again tried, found guilty and sentenced to die. This judgment was affirmed by the Supreme Court of Arkansas. Moore v. State, Ark., 315 S.W.2d 907, and on January 26, 1959, certiorari was denied by the Supreme Court of the United States. Moore v. State of Arkansas, 358 U.S. 946, 79 S.Ct. 356, 3 L.Ed.2d 353.

Boone, also having obtained a severance, was next tried, found guilty and sentence of death was imposed by the court. This judgment was affirmed by the Supreme Court of Arkansas. Boone v. State, Ark., 327 S.W.2d 87. Review by the Supreme Court of the United States was not requested.

Boyd and Byrd were tried jointly, and following a verdict of guilty, they also received the death sentence. The Supreme Court of Arkansas affirmed. Boyd v. State, Ark., 328 S.W.2d 122. Neither Boyd nor Byrd petitioned the Supreme Court of the United States for certiorari.

On February 11, 1960, the day before Moore and Boone were scheduled to die, they sought relief in the federal court by petition for writ of habeas corpus filed in the United States District Court for the Eastern District of Arkansas, Western Division. On the same day Honorable J. Smith Henley, of that court, entered an order to show cause why a writ of habeas corpus should not issue, and the executions of Moore and Boone were stayed. On February 17, 1960, Boyd and Byrd, who were scheduled to die on February 19, 1960, pursued the course taken by Moore and Boone. The District Court directed that the two petitions for writs of habeas corpus be consolidated for the purpose of trial.

A plenary hearing on the petitions for writs of habeas corpus was held in the district court on February 17, 1960. Appellants were present and afforded full opportunity to be heard and to offer testimony. After consideration, and on February 18, the court dismissed the petitions for writs of habeas corpus, vacated the order to show cause issued in connection with the petition of Moore and Boone, denied a certificate of probable cause, and refused a further stay of ex-

ecution. On March 1, 1960, Judge Henley filed a memorandum opinion which contained his findings and conclusions.

On February 24, 1960, upon application of the appellants, this Court issued certificate of probable cause and stays of execution of the death sentences of Moore and Boone scheduled for February 26, 1960, and of Boyd and Byrd scheduled for March 4, 1960. Oral arguments on the appeals were heard on March 9, 1960.

In seeking discharge from custody, appellants contend that their convictions were obtained as the result of deprivation of their constitutional rights as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Specifically, they claim, (1) that their trial on information, rather than on an indictment by a Grand Jury, violated their rights as guaranteed by the Fifth Amendment, as enforced under the Fourteenth Amendment; (2) that Negroes were systematically excluded from jury service in the Miller County Circuit Court, or illegally limited in number; (3) that their confessions were involuntary and improperly admitted.

At the outset we observe that the question of the guilt of appellants is not an issue. In this situation and in view of the posture of the cases in this Court, it is wholly unnecessary to abstract the facts and circumstances attending commission of the crime. They are reported in Moore v. State, 227 Ark. 544, 299 S.W.2d 838.

### Information Issue.

■ The trial court disposed of this issue summarily as being without merit. We agree. The Supreme Court of the United States has consistently recognized that state prosecutions initiated by the filing of an information by the Prosecuting Attorney, here authorized by Ark. Const. Amend. 21, do not violate the constitutional rights of the accused under the Fourteenth Amendment. Hurtado v. People of State of California, 110 U.S. 516, 538, 4 S.Ct. 111, 292, 28 L.Ed. 232; Gaines v. State of Washington, 277 U.S. 81, 86, 48 S.Ct. 468, 72 L.Ed. 793; Bute v. People of State of Illinois, 333 U.S. 640, 657, 68 S.Ct. 763, 92 L.Ed. 986.

### The Jury Issue.

After reversal of the first conviction, appellants filed their joint motion to quash the jury panel on the ground that Negroes had systematically been excluded from jury panels solely on account of their race. After a full hearing was conducted by the circuit court on this issue the motion was denied. With respect to Moore, the district court found there was no evidence to substantiate the charge of racial discrimination in the selection of the jury which decided his case.

■ Nothing that we may utter can add to or affect the principle so firmly established and so recently re-enunciated by the Supreme Court, " * * * state exclusion of Negroes from grand and petit juries solely because of their race denie(s) Negro defendants in criminal cases the equal protection of the laws required by the Fourteenth Amendment. Strauder v. West Virginia, 100 U.S. 303 [25 L.Ed. 664]. (1880)." Patton v. State of Mississippi, 332 U.S. 463, 465, 68 S.Ct. 184, 185, 92 L.Ed. 76. Compare, Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839. An examination of the record bearing upon the course pursued in Miller County, Arkansas, in the selection of juries makes it quite apparent that appellants' charge of systematic exclusion and studied evasion is without foundation in proof. As demonstrated by the Supreme Court of Arkansas in its opinion in Moore v. State, supra, 315 S.W.2d at pages 910–911–912, the facts are that from November, 1953, to and including June, 1957, with the exception of the November, 1956 term, the jury commissioners of Miller County, Arkansas, have consistently selected from one to ten Negroes for jury service in that county.

■ The focal point of appellants' contention, as advanced in their brief and in oral argument, is that discrimination in the selection of jury panels in Miller

County, Arkansas, is necessarily practiced because the Negro race is not represented on the jury commission which is composed of three citizens. It is suggested that "it is almost impossible" for an all-white jury commission to keep informed of the habits and qualifications of the Negro population so that eligible members of that race can be selected for jury duty. We are not persuaded by this novel argument which fails to find support in either precedent or logic. Adoption of the principle contended for would require indulgence in the unwarranted presumption that jury commissioners entirely of one race will not discharge their "duty to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color." Cassell v. State of Texas, 339 U.S. 282, at page 289, 70 S.Ct. at page 633.[1] Moreover, we are satisfied that the theory advanced by appellants would in reality lead to complexities in the administration of an important facet of our system of trial by juries. Application of the principle contended for, could not, in our view, be limited to the white and negro races. It would encompass all races, and the numerous nationalities and religious denominations existent in this country. The words of Mr. Justice Reed, speaking for the Court in Akins v. State of Texas, 325 U.S. 398, at page 403, 65 S.Ct. 1276, at page 1279, seem to be peculiarly appropriate:

> "The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection. Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination 'in the selection of jurors on racial grounds.'" (Emphasis supplied.)

Beyond peradventure of a doubt, the test to be applied in the selection of juries, as laid down by the Supreme Court, is simple and understandable and application thereof should cause no insurmountable problems or difficulties. Our careful and considered examination of the pertinent evidence in light of the governing rule, convinces us that the test was satisfied in the trial of these cases.

### Confessions.

In oral argument, counsel for appellants, with candor, stated that the circumstances surrounding the obtaining of the individual confessions from each of the appellants are accurately reflected in the opinions of the Supreme Court of Arkansas. Moore v. State, Ark., 315 S.W.2d 907; Boone v. State, Ark., 327 S.W.2d 87; Boyd v. State, Ark., 328 S.W.2d 122. Our review of the factual aspect of the confessions will be limited to those essentials necessary to a proper understanding and determination of the pertinent questions before us. At this point it should be said that in each trial, the circuit judge conducted an extensive hearing out of the presence of the jury for the purpose of determining whether the confessions were obtained as the result of methods which would render them inadmissible. In each instance the defendant or defendants on trial testified at length and, while conceding that they were not subjected to physical abuse of any type, they undertook to convince the court that they confessed as the result of fear and intimidation instilled by threats of danger to their lives made by police officers while appellants were being transported to Arkadelphia, Arkansas, and during the course of the questioning in the prosecutor's office. All such testimony was controverted by a Mrs. Merrill,

[1]. After our review of the testimony at the hearing on the motion to quash the jury panel, we are impressed with the sincerity and good faith of the commissioners who were responsible for making up the panel in the Moore trial. It is also apparent that the trial judge bent every effort to assure that defendants' right to a constitutionally selected jury was fully recognized and given meaningful effect.

the reporter who transcribed the statements, and by the officers who participated in the investigation. Each stoutly contended that the defendants were treated well and that the confessions were freely and voluntarily made. After each in-chambers hearing on the question, the court ruled, in effect, that upon the showing made it would not rule the confessions illegal, and the question would be submitted to the jury, which practice was followed in each of the trials. None of the appellants chose to testify before the jury, and thus the uncontroverted evidence of the officers stood alone.[2]

The present contention of appellants stems from the events which transpired during the trial of Boyd and Byrd. In the hearing before the judge in chambers, as in the prior trials, the evidence failed to satisfy the court that the confessions, as a matter of law, were the result of coercion of any kind. When the trial was resumed before the jury, it appeared for the first time from the testimony of one of the officers, that while Boyd was in his custody, the officer repeatedly stated to him that a group of white people was searching for Hamm's body and that Boyd might be in danger if the group discovered the body before the officers did. After this statement Boyd admitted to the officer that he had participated in the robbery of Hamm, but denied that Hamm had been killed. Later Boyd repeated his admission in the presence of Boone, who also admitted participating in the robbery of Hamm. Then Boyd and Boone took the officers to the place where the robbery had taken place and the body of Hamm was discovered within that area.

When this evidence made its appearance, the court promptly ruled that Boyd's oral admissions to the officer and his later written confession would be excluded because made after threats of mob violence. However, the court did admit as against Boyd, the confessions of Moore, Boone and Byrd, and as against Byrd, the confessions of Moore and Boone as well as his own confession. These rulings were approved by the Supreme Court of Arkansas in the Boyd and Byrd case. 328 S.W.2d 122, 125, 126.[3]

Now, and for the first time, the theory is advanced that the threats of violence, which were ruled sufficient to invalidate the admissions and confession of Boyd, were communicated by Boyd to the other appellants before their confessions were made, and that such communicated threats, considered in light of the whole situation and surroundings of the appellants while in custody, rendered all the confessions involuntary and consequently inadmissible.

In view of the contention that the confessions are the product of coercion, we have made our own examination of the record to determine the meritoriousness of the claim, Payne v. State of Arkansas, 356 U.S. 560, at page 562, 78 S.Ct. 844, 2 L.Ed.2d 975, having in mind, however, that in the same case the Court stated that "(e)nforcement of the criminal laws of the States rests principally with the state courts, and generally their findings of fact, fairly made upon substantial and conflicting testimony as to the circumstances producing the contested confession—as distinguished from inadequately supported findings or conclusions drawn from uncontroverted happenings —are not this Court's concern; * *." Ibid, 356 U.S. at page 562, 78 S.Ct. at page 847. Furthermore,

"A jury and the trial judge— knowing local conditions, close to the scene of events, hearing and observing the witnesses and parties—have the same undeniable advantages over

2. See and compare Stein v. People of State of New York, 346 U.S. 156, 73 S. Ct. 1077, 97 L.Ed. 1522. In the Moore case, defendant's father, who established Moore's age, was the only defense witness. Boone, Boyd and Byrd offered no defense witnesses.

3. The confessions of each defendant's "co-conspirators," which had been read aloud in the presence of all four, were admitted for the purpose of allowing the jury to consider each defendant's expressions and reactions to accusation by his fellow-defendants.

any appellate tribunal in determining the charge of coercion of a confession as in determining the main charge of guilt of the crime. When the issue has been fairly tried and reviewed, and there is no indication that constitutional standards of judgment have been disregarded, *we will accord to the state's own decision great and, in the absence of impeachment by conceded facts, decisive respect."* (Emphasis supplied.) Stein v. People of State of

New York, 346 U.S. 156, at pages 180, 181, 182, 73 S.Ct. at page 1091.

There are several vital factors which convince us that the previous rulings by the Arkansas State Courts and the United States District Court were proper and must stand. The claim that the confessions of Moore, Boone and Byrd were induced because of threat of mob violence made to Boyd, was never suggested by any of the appellants in any of the trials or on appeal. As stated, that circumstance was first introduced in the last trial by one of the State's witnesses. None of the appellants testified that he had been influenced or frightened by the warning given to Boyd, although each had ample opportunity to do so. But assuming, arguendo, that the threat which rendered Boyd's confession inadmissible was communicated to the other appellants, we are not persuaded that the confessions made by Moore, Boone and Byrd, several hours later and at a point approximately 75 miles from where they had been apprehended, and under the circumstances presented by the evidence, were the product of methods which render them involuntary as a matter of law. It is important to keep in mind that these confessions were made when any danger of violence from any group was removed. Furthermore, after signing the confessions, all of the appellants were removed to the Arkansas State Penitentiary, a prevailing custom in that state, and about three days later, each confession was read aloud before all four defendants and each appellant ratified his confession in the presence of the others, at which time each

was given the opportunity to correct any misstatement which appeared in the confessions as transcribed by the court reporter. Some minor corrections were in fact made. At that time none of the appellants contended that his confession was induced or influenced by the threat or warning made to Boyd upon which appellants now rely.

Thus, it appears that this is a typical case where we have a direct conflict in the oral testimony with respect to what transpired at and prior to the time the confessions were actually made. We do not have a situation where, admittedly, other undisputed facts tended to corroborate defendants' allegations. See Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L. Ed. 1192; Ward v. State of Texas, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663; Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Brown v. State, 198 Ark. 920, 132 S.W.2d 15.

Furthermore, the Supreme Court has ruled that the effect of threats made at the time of arrest may be tempered by removal to a place of safety, holding that a confession given at such later time is admissible. See Thomas v. State of Arizona, 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed. 2d 863.

After careful consideration of all of the circumstances, we agree with Judge Henley who found that the action of the trial court in admitting the confessions did not constitute a denial of due process of law to any of the appellants.

### Exhaustion of State Remedies.

■ Because we are dealing with a capital offense, we have chosen to dispose of the points raised by appellants on the merits. Additionally, we are convinced that there is substance in the appellee's contention that appellants are not entitled to relief in these proceedings because of their failure to exhaust their state reme-

dies as required by 28 U.S.C.A. § 2254. Although they joined in the petition to quash the jury panel in Moore's trial, neither Boone nor Boyd and Byrd made any further claim that systematic discrimination or studied exclusion had been practiced. It is quite evident that in each of the trials the jury composition was different; Moore was tried July 10, 1957, Boone was not retried until September 29, 1958, and Boyd and Byrd were not retried until the November, 1958 term. There was no evidence whatever that racial discrimination was practiced in the selection of the jury panels for the September and November, 1958 terms of court. It would thus appear that the failure of Boone, Boyd and Byrd to challenge the process pursued in the selection of the panels from which the jurors were chosen to try them, or to raise the question in either the Circuit Court or Supreme Court of Arkansas, constitutes an effective waiver of the point under the doctrine of exhaustion of state remedies. Bailey v. Henslee, 8 Cir., 264 F.2d 744, certiorari denied 361 U.S. 945, 80 S.Ct. 408, 4 L.Ed.2d 364; Carruthers v. Reed, 8 Cir., 102 F.2d 933, 939, certiorari denied 307 U.S. 643, 59 S.Ct. 1047, 83 L.Ed. 1523; Hollman v. Manning, 4 Cir., 262 F.2d 656, certiorari denied 359 U.S. 996, 79 S.Ct. 1131, 3 L.Ed.2d 984.

As to the confessions, as we have seen, the precise point presented here was not raised by any of the appellants in their trials or on appeals from the convictions. Additionally, neither Boone nor Boyd and Byrd petitioned the United States Supreme Court for writ of certiorari, and, finally, none of the appellants has sought relief by writ of habeas corpus in the state courts. See Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Ex parte Hawk, 321 U.S. 114, 116, 117, 64 S.Ct. 448, 88 L.Ed. 572; Hollman v. Manning, 4 Cir., 262 F.2d 656, 658, certiorari denied 359 U.S. 996, 79 S.Ct. 1131, 3 L.Ed.2d 984; Guy v. Utecht, 8 Cir., 144 F.2d 913, 916.

Judge Henley, who is more familiar with the local situation, concluded that "(t)he Hamm murder case has been tried four times by an able, fair and experienced trial judge, and has been the subject of four full opinions of the Supreme Court of Arkansas." From our own review of the records made in the trials of this particularly vicious crime, we too are impressed with the conscientious efforts of the trial judge in assuring that defendants' constitutional rights were respected at every step, and we are fully convinced that appellants have not been denied due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

The judgments are affirmed. Mandates will issue ten days after the filing of this opinion.